## IN RE RAYNES.

[No. 10,064. Filed December 21, 1917.]

1. MASTER AND SERVANT.—*Workmen's Compensation Act.—Accident Arising in the Course of and Out of Employment.*—If the exclusive purpose of defendant company's collector in going to another city was to collect amounts due the company, then in going to such city the collector, who was also secretary-treasurer of the company, was discharging the duties of his employment. p. 325.

2. MASTER AND SERVANT.—*Workmen's Compensation Act.—Certified Questions of Law.—Province of Industrial Board.—Ultimate Facts.*—Whether defendant company's collector was actuated in going to another city by a purpose to serve his employer, and was devoting his time and efforts to that end, because unable to complete the employer's business before the departure of the last car, he was compelled to make the return trip by automobile,

resulting in his injury, or whether he was seeking his own pleasure, with a secondary object of collecting accounts for the master, are questions of ultimate fact which it is the province of the Industrial Board rather than the Appellate Court to deduce. p. 325.

3.  MASTER AND SERVANT. — *Workmen's Compensation Act.* — *Employe.*—Employes intended to become beneficiaries of the Workmen's Compensation Act, Acts 1915 p. 392, are, in a general way, those whose remuneration is popularly designated as wages rather than salary, whose compensation is not munificent, who may reasonably be presumed to be dependent on wages for the sustenance of themselves and families, whose wives and young children may reasonably be presumed without proof to be dependent on them for support, and whose labor is manual, or of a like degree of industrial or commercial importance as manual labor when viewed from the standpoint of individual accomplishment, although none of such tests are decisive in determining those entitled to compensation under the act. p. 329.

4.  MASTER AND SERVANT.—*Workmen's Compensation Act.—Employe. —Officer of Corporation.*—That one is president or other executive or managing officer of the corporation employing him is not alone sufficient to eliminate him from those regarded as employes within the meaning of workmen's compensation acts. p. 332.

5.  MASTER AND SERVANT.—*Workmen's Compensation Act.—Questions of Fact.—Employe.—Officer of Corporation.*—Whether a stockholder and officer of a corporation who is employed by it at a salary to act as buyer, salesman and collector of accounts is an employe within the meaning of the Workmen's Compensation Act, Acts 1915 p. 392, is a question of fact for the Industrial Board. p. 332.

From the Industrial Board of Indiana.

Certified question of law.

Proceedings under the Workmen's Compensation Act in the matter of one Raynes. Certified questions of law by the Industrial Board. *Questions answered.*

CALDWELL, J.—The material facts as certified by the board are in substance as follows: On December 25, 1916, and for several years prior thereto the Staats-Raynes Company was a merchandising corporation organized with a capital stock of $15,000. It was engaged in the sale of merchandise, including

hardware, jewelry and miners' supplies, at Clinton,
Vermillion county. There were but three stockhold-
ers, Bert F. Raynes being one of them. The stock-
holders constituted the board of directors. On said
day, and for several years prior thereto, Bert F.
Raynes was secretary-treasurer of the company and,
in addition to performing the regular duties of that
office, he served also as buyer for the company, as a
salesman in the store, and as collector of its accounts.
The company paid him for his services $50 per week.
Prior to said date many of the customers of the
company who had resided in and near Clinton had
removed to Terre Haute and West Terre Haute,
leaving unpaid accounts for goods purchased by them
of the company. For some time prior to December
25, 1916, Bert F. Raynes had been in the habit of
making occasional trips to Terre Haute and West
Terre Haute for the purpose of collecting moneys
due from such persons to the company upon their
said accounts, which trips were made at the expense
of the company, in the sense that it paid the transpor-
tation charges. On such prior trips he had learned
that many of such debtors of the company frequented
the lobby of the Terre Haute Hotel and the bar
thereof. At two o'clock p. m. on December 25, 1916,
he took ten or more statements of accounts of such
persons and went to Terre Haute by interurban, for
the purpose of collecting such accounts. Arriving in
Terre Haute, he went directly to the lobby of the
Terre Haute Hotel, and to the bar thereof, which was
open. From three o'clock until six o'clock he re-
mained in and about the lobby and barroom of the
hotel, except a short period of time during which he
went to West Terre Haute, a distance of two miles,
to see a person owing one of the accounts he had

taken with him. Not finding such person at home, he immediately returned to the Terre Haute Hotel. Between three o'clock and six o'clock p. m. of that day he saw in the lobby of the hotel and in the barroom thereof several of the persons whose accounts he had taken with him to said city for collection, interviewed such persons and endeavored to make collections from them. Within such time he also interviewed an attorney in the barroom relative to placing the accounts in his hands for collection. After six o'clock he left the hotel, got his supper at some point which he claims he does not remember, and thereafter and between six o'clock and eleven o'clock p. m. he visited the Elks Club, another hotel, and also spent a portion of such time in the lobby and barroom of the Terre Haute Hotel. He claims that he does not remember what other places he visited within such time. While in Terre Haute on this occasion he drank several glasses of beer. The last interurban car leaving Terre Haute for Clinton on said date left Terre Haute at eleven o'clock p. m. Soon after that hour he discovered that the last interurban had departed for Clinton, and he then made arrangements with a taxicab driver to drive him by automobile to Clinton. In such automobile he left the Terre Haute Hotel about 11:30 o'clock. The driver proceeded north a short distance, and then stopped at a garage to get some gasoline. Bert F. Raynes thereupon got out of the automobile into the street for the purpose of permitting the driver to alight therefrom. Immediately after he stepped into the street, and while standing about three feet from the automobile in which he had been riding, he was struck by an automobile driven by a third party, and as a consequence he was severely injured, his

injuries being permanent, and resulting in total disability for six months.

On the facts, the board seeks the opinion of this court on three questions of law, in substance as follows: Assuming that Bert F. Raynes was an employe of the company within the meaning of the Workmen's Compensation Act:

(1) Did the accident resulting in the injury occur in the course of his employment?

(2) Did the accident arise out of his employment?

(3) Upon the facts was Bert F. Raynes at the time of his injury an employe of the company within the meaning of the Workmen's Compensation Act?

As bearing on the first and second questions, the certified statement contains a number of evidentiary facts from which the board has not deduced the ultimate facts essential to a direct answer to these questions. There is a statement that on the occasion involved here Bert F. Raynes went to Terre Haute for the purpose of collecting accounts due the company. This statement is an ultimate fact. If to collect such accounts was his exclusive purpose, then in going to Terre Haute he was discharging the duties of his employment. Perhaps the same conclusion would follow if such was his principal purpose. If, however, he was moved by other purposes which he carried out, the collecting of accounts being a mere incident, then we do not believe that it can be said that he was engaged in discharging the duties of his employment. The facts stated respecting his subsequent movements in visiting hotels, barrooms, clubs and unremembered places are for the most part but evidentiary of important ultimate facts not deduced or

certified. In such subsequent movements was he actuated by a purpose to serve his employer, and was he devoting his time and efforts to that end, or chiefly to that end, or was he in the main merely seeking his own pleasure in whiling away a holiday afternoon, with a secondary object of collecting accounts if he might conveniently do so without materially detracting from the pleasure of the occasion? If he went to Terre Haute to further the interests of his employer, did he subsequently lose sight of such object that he might become the devotee of conviviality? What caused him to miss the last car, and what gave rise to the necessity of his endeavoring to procure transportation from Terre Haute in a taxicab? Did he miss the car and did such necessity arise because he had been diligently engaged in his employer's business, and because he was unable to complete such business before the last car left, or was it because the sociabilities of the occasion caused him to become oblivious to lapsing time and passing events? These are questions of ultimate fact which it is the province of the board rather than this court to deduce.

In the one case, it is our judgment that the accident arose out of and in the course of the employment. The following have a bearing: *In re Harraden* (1917), *ante* 298, 118 N. E. 142; *Pierce* v. *Provident Clothing, etc., Co.* (1911), 4 B. W. C. C. 242; *M'Neice* v. *Singer Sewing Machine Co.* (1910), 4 B. W. C. C. 351; *Kunze* v. *Detroit Shade Tree Co.* (1916), 192 Mich. 435, 158 N. W. 851, L. R. A. 1917A 252; *Mahowald* v. *Thompson-Starrett Co.* (1916), 134 Minn. 113, 158 N. W. 913, 159 N. W. 565; *Miller* v. *Taylor* (1916), 173 App. Div. 865, 159 N. Y. Supp. 999; *Friebel* v. *Chicago City R. Co.* (1917), 280 Ill.

76, 117 N. E. 467; *White* v. *Avery* (1915), 53 Scot. L.
R. 122; *Putnam* v. *Murray* (1916), 174 App. Div.
720, 160 N. Y. Supp. 810. In the other case our judgment is otherwise. The following are instructive:
*Inland Steel Co.* v. *Lambert* (1917), *ante* 246, 118
N. E. 162; *Hewitt's Case* (1916), 225 Mass. 1, 113 N.
E. 572, L. R. A. 1917B 249; *Smith* v. *Lancaster, etc.,
Ry.* (1899), 1 Q. B. 141; *Ocean Accident, etc., Co.* v.
*Industrial Accident Comm.* (1916), 173 Cal. 313, 159
Pac. 1041, L. R. A. 1917B 336; *M'Lean* v. *Macbrayne*
(1916), 53 Scot. L. R. 254.

We proceed to the third question: An examination of the Workmen's Compensation Act (Acts
1915 p. 392), including the title, discloses that the
beneficiaries of its provisions are designated without
exception as employes. The first section, however,
is to the effect that the act shall be known as "The
Workmen's Compensation Act." The word "employe" is a term of broad significance. Its definitions take a wide range. Among those set out in 15
Cyc 1031, are the following: A person who is
engaged in the service of another; one whose time
and skill are occupied in the business of his employer; a laborer when engaged in service under a
contract for compensation. In *Palmer* v. *VanSantvoord* (1897), 153 N. Y. 612, 47 N. E. 915, 38 L. R. A.
402, the court in holding that one employed at a salary of $100 per month to go from place to place to
fix and set up machines, and pack and unpack them,
as well as to make sales, was an employe within the
meaning of a statute that gave a preference to wage
claims of employes, operators and laborers of corporations, quoted with approval the Century Dictionary definition as follows: "One who works for an
employer; a person working for salary or wages;

applied to any one so working, but usually only to clerks, workmen, laborers, etc., and but rarely to the higher officers of a government or corporation or to domestic servants.'' The question here, however, involves the meaning of the term ''employe'' as used in the act. Its scope is outlined therein as follows:, '' 'Employe' shall include every person, including a minor, in the service of another under any contract of hire or apprenticeship,'' etc., with exceptions not applicable here. §76. This language literally interpreted is also rather broad, but perhaps is modified somewhat by other provisions of the act. Thus as we have said, the act is designated as the Workmen's Compensation Act. The term ''workman'' is also somewhat comprehensive. A workman is defined as a man employed in labor; a worker; a skilful artificer or laborer; a man who is employed in manual labor whether skilled or unskilled; a toiler; a mechanic; an artisan, etc. 40 Cyc 2860. Popularly the term includes those who work with their hands at some sort of manual labor, but excludes those who do mental work merely. Of course, we should not be understood as indicating that only those who do manual labor come within the provisions of the act, but rather that the conception usually formed in the mind by the use of the term ''workman'' is of a person that does that sort of work. There are other provisions of the act that in a general way indicate its beneficiaries. Thus by §16 it is provided that compensation granted by the act shall have the same preference or priority against the assets of the employer as is allowed by law for any unpaid wages for labor. An inspection of the laws referred to, as §7976 *et seq.* Burns 1914, Acts 1885 p. 95, discloses that persons who work at manual labor compose by

far the greater part of the persons intended thereby
to be protected.   A superintendent, however, em-
ployed at a salary of $100 per month, whose princi-
pal duty was the supervision of work done by labor-
ers, was held to be included within the provisions of
the act last mentioned.   *Pendergast* v. *Yandes*
(1890), 124 Ind. 159, 24 N. E. 724, 8 L. R. A. 849.   By
the terms of §52 of the Workmen's Compensation
Act, *supra,* the State Board of Inspection was abol-
ished, and its duties transferred to the Industrial
Board.   This body also when in existence dealt for
the most part with those who performed manual
labor, and the relation of such persons to their work
and their employers.   §8021 *et seq.* Burns 1914, Acts
1911 p. 145.   By the provisions of the act, *supra,*
compensation is awarded on a basis of a certain per
cent. of what is designated as the "average weekly
wages" rather than salary of the workman involved,
and as a rule is required to be made in weekly pay-
ments rather than in a lump sum.   In case of the
decease of an employe, compensation is awarded to
his dependents.   Where the family relation actually
exists, the wife and also the children within a certain
age are conclusively presumed to be wholly depend-
ent, and under some circumstances the husband also,
where the deceased employe was a wife.   §38.   It is
provided also that in computing compensation, the
average weekly wages of the employe should be con-
sidered as not exceeding $24.   §40.

From this brief examination of the act, *supra,* it is
not a very hard problem to determine in a general
way the sort of employes intended to become
3.   its beneficiaries, although difficulties may pre-
sent themselves in applying the general stan-
dard to the individual case.   In a general way, it is

an employe whose remuneration is popularly designated as wages rather than salary; whose compensation for service is not munificent; who may reasonably be presumed to be dependent on his wages for the sustenance of himself and family, and whose wife and young children may · reasonably be presumed without proof to be dependent on him for support; whose labor is manual, or of a like degree of industrial or commercial importance as manual labor when viewed from the standpoint of individual accomplishment. We should not be understood as indicating that any of these tests are decisive, or that one whose earnings are designated as salary, or one who does not in fact depend on his wage, or· whose wife and children are not in fact dependent on him for support, or whose wage is materially more than $24 per week, or whose labor is other than manual, is not entitled to compensation under the act. We are merely formulating a concept in a general way of the sort of person that may be deemed to be an employe within the meaning of the act. Measuring the case of Burt F. Raynes by these general observations, we find nothing in the certified facts, aside from the element that he was a corporate officer, which we shall later consider, to exclude him from the class designated in the act as employes. Does the mere fact that he was an officer of the corporation exclude him?

In 1 Honnold, Workmen's Compensation 173, occurs the statement that, as a general rule, the fact that one is an officer or director of the corporation employing him will not preclude him from being deemed an employe within the meaning of compensation acts. The author cites in support of the statement the rulings of certain industrial boards, includ-

ing a ruling made by the Industrial Commission of New York in *Bowne* v. *S. W. Bowne Co.* Such ruling was subsequently sustained in the Appellate Division of the Supreme Court (173 App. Div. 131, 162 N. Y. Supp. 244), but was reversed by the Court of Appeals. (221 N. Y. 28, 116 N. E. 364). The facts were as follows: The corporation was capitalized at $80,000, of which the president, who was the claimant, owned $56,000. He was injured while assisting certain employes in removing lumber. His salary was $70 per week. He superintended the various activities of the plant, and at times assisted in manual labor. His stock yielded him dividends for the previous year amounting to $30,000. We believe that that case was correctly decided by the Court of Appeals, and that it did not appear that the claimant was such an employe as is entitled to compensation under the New York Act.

The decision in *Beckmann* v. *Oelerich & Son* (1916), 174 App. Div. 353, 160 N. Y. Supp. 791, is indicated by the following quoted therefrom: "As to the claim that the claimant was not an employe within the meaning of the act. The claimant spoke of his compensation for services as salary. He was the owner of seven of the 100 shares of stock of the corporation. There is no claim that the payments received by him were dividends upon his stock. The commission found that the weekly payment made him was his weekly wage. Its finding was fully justified by the evidence. While he was vice-president of the corporation his employment was doubtless through the board of directors, of whom he may or may not have been one. Although he was the general foreman, he worked in the various industries of the corporation the same as other workmen, and was doing

the work of an ordinary employe at the time he was injured. His being vice-president and a stockholder in no way affected his status as an employe.'' See, also, *Carswell v. Sharpe* (1910), 3 B. W. C. C. 552, which bears somewhat on the question.

It appears to us as sound that compensation under workmen's compensation acts cannot be denied one simply because he happens to be the president or other executive or managing officer of the corporation that employs him, and that that fact alone is not sufficient to eliminate him from among those regarded as employes within the meaning of such acts. If the corporation is great and powerful, with extensive financial resources; if an official is a large stockholder and his time is occupied in the discharge of the usual duties of his office and his salary is fixed because of the discharge of such duties, it would seem apparent that he could not be regarded as an employe under such an act. But in another corporation of humbler proportions such an official might serve in a dual capacity; that is, as an officer and also as a workman. It is not unreasonable to conceive of a case where the discharge of the official duties would constitute but a small portion of the services rendered by him to the corporation. Such an officer might be hired in fact to perform manual labor in connection with other employes, and his time in the main be occupied in performing such service and regular wages paid him accordingly. Such an official in his capacity as a workman might measure up in all respects to the conception of an employe within the meaning of the act as we have hereinbefore developed it, and in such capacity we believe that he should be regarded as an employe within the meaning of compensation acts.

We find nothing in the facts here inconsistent with regarding Burt F. Raynes as such an employe. The question of what constitutes an employe under the act is a law question. However, having thus outlined the law as we conceive it to be, we regard the question as to whether the claimant here is such an employe as one of fact for the board, and we so answer the third question.

NOTE.—Reported in 118 N. E. 387. Workmen's compensation: who are "employes" within meaning of act, L. R. A. .1916A 115, 246, Ann. Cas. 1913C 28, 1916B 793, 1918B 704. See also note *ante* 261.