NORTHERN INDIANA GAS AND ELECTRICAL COMPANY *v.* PIETZVAK.

[No. 10,009. Filed December 19, 1917. Rehearing denied March 22, 1918. Transfer denied December 17, 1918.]

1. MASTER AND SERVANT.—*Workmen's Compensation Act.—Injury Arising Out of and in Course of Employment.*—In a proceeding under the Workmen's Compensation Act, Acts 1915 p. 322, §80201 *et seq.* Burns' Supp. 1918, for compensation for the death of a janitor by electrocution while cleaning a room which he had been forbidden to enter, evidence *held* sufficient to sustain a find-

Northern Ind. Gas, etc., Co. *v.* Pietzvak—69 Ind. App. 24.

ing that death resulted from an accident arising out of and in the course of his employment. p. 30.

2. MASTER AND SERVANT.—*Workmen's Compensation Act.—Scope.— Wilful Misconduct.*—Section 8 of the Workmen's Compensation Act, Acts 1915 p. 392, §8020l *et seq.* Burns' Supp. 1918, providing that no compensation shall be allowed for an injury or death due to the employe's wilful misconduct, including intentional self-inflicted injury, intoxication, or wilful failure or refusal to use a safety appliance or perform a duty required by statute, indicates by its language that other than the causes of injury enumerated as constituting forms of "wilful misconduct" may be included in that term. p. 31.

3. MASTER AND SERVANT.—*Workmen's Compensation Act.—Appeal. —Scope of Review.*—In a proceeding for compensation under the Workmen's Compensation Act, Acts 1915 p. 392, §8020l *et seq.* Burns' Supp. 1918, the question as to whether the injury involved was due to wilful disobedience to orders cannot be reviewed on appeal where such special defense was not pleaded by an affirmative answer as required by Rule 10 of the Industrial Board, such rule being reasonable and within the authority of the board. p. 31.

From the Industrial Board of Indiana.

Proceedings for compensation under the Workmen's Compensation Act by Catherine Pietzvak against the Northern Indiana Gas and Electrical Company. From an award for applicant, the defendant appeals. *Affirmed.*

*Bomberger, Peters & Morthland,* for appellant.
*McAleer, Dorsey & Gillett,* for appellee.

DAUSMAN, J.—Appellee is the widow of one Walenty (Valentine) Pietzvak, deceased. She filed a petition for an award of compensation on the ground that, while in the employment of appellant, her husband came to his death by reason of an accidental injury which arose out of and in the course of his employment. On May 14, 1917, the full board, on review, made a finding and an award. The board

found, among other facts, that Walenty Pietzvak, while in the employment of appellant, "received a personal injury by an accident arising out of and in the course of his employment, resulting in his instant death"; that he left surviving as his sole and only dependents his wife, Catherine Pietzvak, and six children, whose names and ages are set out; and "that prior to the 1st day of September, 1915, the Industrial Board of Indiana adopted certain rules governing the prosecution of compensation claims before it, and that among said rules is Rule 10, which has been in full force continuously since the 1st day of September, 1915, and is in the words and figures following, to-wit:

"Rule 10. The defendant may file an answer of denial to the application, petition or complaint of the plaintiff at any time before the date set for the hearing, but no such answer is required, and, if none is filed, the allegations contained in the application, petition or complaint will be deemed to be denied.

"If the defendant rely upon the special defense that the injury or death of the employe was due to the wilful misconduct of the employe, including intentional self-inflicted injury, intoxication, wilful failure or refusal to use a safety appliance, wilful failure or refusal to perform a duty required by a statute, or any other defense of confession and avoidance, such special defense must be pleaded by an affirmative answer at least five days before the date set for the hearing."

The board further found "that the defendant did

not at any time file in this cause any special answer averring that the death of Walenty Pietzvak was due to any wilful misconduct upon his part or pleading any other defense of confession and avoidance.''

The assignment of error is that ''the award of the full board is contrary to law.'' Under this assignment appellant's only contention is that the death of Pietzvak did not arise out of and in the course of his employment.

There is but one question presented for our consideration: Is there any evidence on which the finding can stand?

The undisputed evidential facts are as follows: Walenty Pietzvak was a Pole and unfamiliar with the English language. On April 28, 1916, appellant employed him as janitor for its industrial establishment, and he began work therein on the following day. At that time appellant was engaged in the business of manufacturing and distributing gas and electricity, and had in its employment about 250 persons. Extending across the south end of the ground floor room of the factory are two balconies, one above the other. The lower one is referred to in the evidence as the first balcony, and the higher one as the second balcony. These balconies were reached by stairways extending from the ground floor. The second balcony is about twenty-five feet wide, north and south; and at the west end thereof a space of about twenty feet east and west is separated from the rest of the balcony by an iron rail with a gate for ingress and egress. This space, then, was bounded on the north by an iron rail along the floor edge of the balcony; on the east by an iron rail with gate; on the south by a brick wall; and on the west by a brick wall.

(The brick walls throughout the building were white enameled.) This inclosure is known as the "33,000-volt room" and on the gate a placard is kept on which is printed in English "Danger. 33,000 volts." Within the inclosure were two electrical apparatuses, about four feet high, inclosed in a covering of some kind, and out of the top of each incasement issued "wires and conduits and things" which "went up towards the ceiling and then turned over and ran into the wall." Some of the witnesses called them "oil switches"; others called them "bus switches." As janitor of the plant, Pietzvak was required to do the work which up to that time had been done by two men. When the maintenance foreman employed Pietzvak, he "took him over the entire building where his work called him and warned him against everything that was in a dangerous position, to keep away from it; and especially warned him never to enter the 33,000-volt inclosure." The maintenance foreman spoke English only. Pietzvak answered, "Me know." After this Mike Dorback, one of the outgoing janitors, remained and worked with Pietzvak for one week, "showing him the work and telling him of the dangerous points." Dorback could speak "Hungarian, Slavish and English." He showed Pietzvak the 33,000-volt room and told him in Slavish and English to keep out of there; that it was dangerous; that he should never "go into the west end of the second balcony unless some one went with him"; and that "if he touched a wire he get killed." Pietzvak was then given a schedule of his duties, typewritten in English, and told to follow it in his work. This schedule contained the following directions: (1) Sweep office floor and dust furniture; (2) sweep office

and washroom floor, clean wash bowls and toilet; (3) sweep washroom floor under office, clean wash tub, toilet and urinal; (4) sweep main floor of turbine room and entrance to stairs; (5) sweep first balcony and scrub every other week, alternating with second balcony. On one occasion the station electrician took Pitezvak to the rail at the 33,000-volt inclosure and said to him in English, "Now, if you should ever go in there and touch any of those wires it would kill you quick." To this statement Pietzvak responded, "Me know. Me no touch." The only time the maintenance foreman saw Pietzvak in that inclosure was on an occasion when said foreman was with him and "told him again and again of the danger" therein.

On the afternoon of June 7, 1916, Pietzvak was electrocuted in the 33,000-volt inclosure. The electrical disturbance caused by his electrocution was observed throughout the plant and brought a number of persons to the scene of the accident. They found there a bucket of dirty water and some dirty cloths; part of the machinery encasements had been cleansed of the accumulated dust, the walls had been washed, the floor had been scrubbed and was still wet. No one witnessed the accident; but the physician and some of the officials of the company who assembled there soon after were of the opinion that the only way it could have occurred was "that he was wiping this thing and the electricity came over it as it was going through these wires from the machinery, that are up and across his head. He would be down there right along these wires that go across; and the spark must have come down and he made a circuit there some way or other." It is not disputed that Pietzvak came

to his death by electrocution. There is evidence tending fairly to prove that at the time of his death he was performing a service for his employer, and was engaged in work of the general kind and character as that which he was employed to do.

Whether Pietzvak understood from the directions given him that he was positively forbidden ever to enter the 33,000-volt room, or, in other words, whether he had been sufficiently instructed in reference thereto, whether he had been permitted from time to time to do janitor service in that room, and whether he was guilty of violating his instructions or orders, are controverted matters.

The Industrial Board has not decided the question, Was Pietzvak's death due to wilful misconduct?

(1) That the evidence tends fairly to support the finding that Pietzvak's death arose out of and in the course of his employment we have not the slightest doubt. Therefore, we cannot reverse the Industrial Board as to that finding

But appellant insists that he went there "against the express order and direction of those that he was under obligation to obey," and that therefore his death cannot be regarded as arising out of the employment. Indeed, appellant's contention amounts to a confession that his death would have to be regarded as arising out of and in the course of his employment, if it were not for the fact—if it be the fact—that he went to the place of his death in disobedience of the instructions of his employer.

(2) Should this court pass upon the alleged disobedience? The Indiana Workmen's Compensation Act contains the following provision: "Sec. 8. No compensation shall be allowed for an injury or death

due to the employe's wilful misconduct, including intentional self-inflicted injury, intoxication, and wilful failure or refusal to use a safety appliance or perform a duty required by statute. The burden of proof shall be on the defendant employer." Acts 1915 p. 392, §8020r Burns' Supp. 1918.

The language of said section indicates that the legislature did not intend that all forms of wilful misconduct other than those mentioned therein

2.   should be excluded and disregarded, or that nothing else should be regarded as constituting wilful misconduct. On the contrary, said language indicates that the legislature was sensible of the fact that other forms of wilful misconduct *might* be recognized, but wanted to make sure that those specified *would* be recognized in the administration of said act. Under the English act—the parent act of which ours is one of the many offspring—it is held that the wilful violation of orders comes under the head of wilful misconduct (Dawbarn, Workmen's Compensation [4th ed.] 139 *et seq.*); and in our judgment there is where it belongs. This view of the matter is logical. It tends to avoid confusion and to promote clear thinking. The Industrial Board recognized the need of it by adopting Rule 10.

In its original finding the Industrial Board found as a fact "that the injury to and the death of the said Walenty Pietzvak were not due to any wilful

3.   misconduct on his part"; but did not include said Rule 10 in said original finding. In its finding of facts made on the rehearing the board has omitted the finding as to wilful misconduct, but has incorporated therein said Rule 10. From this action on the part of the board, the conclusion is obvious

that the board was of the opinion that the question of wilful misconduct was not in issue because it had not been pleaded as provided in said rule. In this the board was entirely right. The adoption of said rule was a reasonable and timely exercise of the authority conferred by the legislature. §55 W. C. A., Acts 1915 p. 392, §80201 Burns' Supp. 1918. It tends to facilitate the work of the board and to promote justice. Whatever the question of wilful misconduct might have been worth if pleaded, appellant has waived it by its failure to comply with said rule.

The award is affirmed; and by virtue of the act approved March 5, 1917, Acts 1917 p. 154, §8020q2 *et seq.* Burns' Supp. 1918, the amount thereof is increased five per cent.