## GARY RAILWAYS, INC. *v.* GARLING ET AL.

[No. 17,888.   Filed November 21, 1949.   Rehearing denied December 15, 1949.   Transfer denied January 19, 1950.]

Draper, C. J., and Martin, J., not participating.

*Hodges, Ridgely & Davis,* of Gary, for appellant.

*Harry Long, Harry N. Robbin,* both of Gary, and *William J. Jensen,* of Hobart, for appellees.

ROYSE, J.—This is an appeal from an award of the Full Industrial Board granting appellees compensation for the death of their husband and father respectively, which death resulted from injuries received in an accident arising out of and in the course of his employment.

In answer to appellees' Form 10 Application for Compensation, appellant filed its special answer in three paragraphs averring the cause of the accident and death of appellees' decedent was the violation of certain provisions of the statutes of this state.

The undisputed facts as shown by the record in this case may be summarized as follows:

In the City of Hobart, Wisconsin Street runs in a north and south direction. This street is intersected by two tracks of the Pennsylvania Railroad which run in a general east and west direction. Before dawn in the early morning of December 20, 1947 appellees' decedent was operating for appellant a motor bus, which was a common carrier and at the time had passengers aboard, in a northerly direction on said Wisconsin Street from south of the place where the railroad tracks intersect this street. There was a window to the left of where decedent was sitting out of which he could see. Decedent stopped south of this intersection while a short freight train proceeded west on the north track. Immediately after the caboose cleared the crossing decedent started across the tracks and his bus was struck by a passenger train which was traveling east on the south track. He died as a

result of the injuries received. The record discloses that at the time a number of cars were waiting on both the north and south sides of the tracks to cross the intersection. Eye witnesses said the headlight of the passenger train was clearly visible before the freight train had cleared the crossing. There were no houses on the west side of Wisconsin Street south of the crossing, nor any obstructions at the southwest corner of the intersection. There was nothing between the bus and approaching passenger train which would have interfered with the view of decedent. The crossing has flasher lights and they were working at all times from the time decedent stopped his bus up to and including the time of the collision. Decedent's bus was the only vehicle which attempted to cross the tracks after the freight train passed. The engineer of the passenger train testified he was traveling about sixty-five miles per hour. He had the bright lights on his engine. He sounded the engine whistle about 2,000 feet west of the crossing and the bell was ringing all the way down. One witness, a fellow-employee of decedent, heard the whistle. Another could not remember if he heard it. There were no automatic safety gates at the crossing. There was no police officer at the intersection directing traffic. The City of Hobart had adopted an ordinance requiring the Pennsylvania Railroad to install automatic gates at the crossing within ninety days from June 18, 1947.

Sections 47-2114 and 47-2116, Burns' 1940 Replacement, provide as follows:

47-2114. "Whenever any person driving a vehicle approaches a railroad grade crossing, the driver of such vehicle shall stop within fifty (50) feet but not less than ten (10) feet from the nearest track of such railroad and shall not proceed until he can do so safely, when:

"(a)   A clearly visible electric or mechanical signal device gives warning of the immediate approach of a train.

"(b)   A crossing gate is lowered or when a human flagman gives or continues to give a signal of the approach or passage of a train.

"(c)   A railroad train, as defined in this act, approaching within approximately one thousand five hundred (1,500) feet of a highway crossing emits a signal audible for such distance and such train, by reason of its speed or nearness to such crossing, is an immediate hazard.

"(d)   An approaching train is plainly visible and is in hazardous proximity to such crossing."

47-2116.  "(a)   The driver of any motor vehicle carrying passengers for hire, or of any school bus carrying any school child, or of any vehicle carrying explosive substances or flammable liquids as a cargo or part of a cargo, before crossing at grade any track or tracks of a railroad, shall stop such vehicle within fifty (50) feet, but not less than ten (10) feet from the nearest rail of such railroad and while so stopped, shall listen through an open window or door and shall look in both directions along such track for any approaching train, and for signals indicating the approach of a train, except as hereinafter provided, and shall not proceed until he can do so safely. After stopping as required herein and upon proceeding when it is safe to do so, the driver of any said vehicle shall cross only in such gear of the vehicle that there will be no necessity for changing gears while traversing such crossing and the driver shall not shift gears while crossing the track or tracks.

"(b)   No stop need be made at any such crossing where a police officer or a traffic control signal directs traffic to proceed.

"(c)   This section shall not apply at street railway grade crossings within a business or residence district; and it shall not apply to abandoned or unused tracks."

It is a misdemeanor to violate the foregoing provisions of the statute. § 47-2304, Burns' 1940 Replacement.

In this appeal appellant contends the evidence is such that reasonable men could reach only the single conclusion that decedent's death was solely caused by his violation of the above mentioned provisions of the statute. It further contends the Industrial Board failed to make a finding on the issues raised by its special answer.

In our opinion the record herein conclusively establishes that at the time decedent started across the railroad tracks the flasher lights were working and clearly visible as a warning of the immediate approach of the passenger train; that the train was sounding an audible signal and was plainly visible, all of which indicates the train was in hazardous proximity to the crossing, and that under such circumstances reasonable persons, including decedent, would or should have known they could not safely proceed across the tracks. It is equally conclusive that if he had looked and listened, as required by § 47-2116, *supra*, he would or should have known he could not safely cross these tracks. These facts lead inescapably to the conclusion that the sole cause of decedent's death was his violation of the statute. Likewise, under these facts, the failure of the Pennsylvania Railroad to install automatic gates at the crossing could not have been the proximate cause of decedent's death.

In the findings of the Board the only reference to the issues raised by the special answer is contained in the following statement:

"The Full Industrial Board of Indiana, by a majority of its members, now finds for the plaintiffs and against the defendant on plaintiff's form 10 application filed with the Board June 30, 1948,

and each of defendant's Special Answers addressed thereto, filed with the Board August 17, 1948, September 8, 1948, and October 26, 1948, respectively."

We are of the opinion the Board should have found specifically whether or not decedent's death was caused by the violation of the statutes referred to in the answer.

The award of the Industrial Board of Indiana is reversed, and the Board is hereby directed to set aside and vacate the award herein, and for further proceedings not inconsistent with the views herein expressed. *Heflin* v. *Red Front Cash & Carry Stores, Inc.* (1948), 225 Ind. 517, 525, 75 N. E. 2d 662.

Draper, C. J., and Martin, J., not participating.

NOTE.—Reported in 88 N. E. 2d 571.