SHERREL PAGE *v.* BOARD OF COMMISSIONERS OF THE COUNTY OF CLAY.

[No. 172A8. Filed February 13, 1973.]

*B. Michael McCormick, Daniel L. Weber,* of Terre Haute, for appellant.

*Joseph A. Wicker,* of Indianapolis, *Robert J. Wicker,* of Greenwood, *Williams, Van Valer & Wicker,* of counsel, of Greenwood, for appellee.

## CASE SUMMARY

BUCHANAN, P.J.—Judicial review is sought from an award of the Industrial Board of Indiana (the Board) against the defendant-appellee the Board of Commissioners of the County of Clay (the County), and in favor of plaintiff-appellant, Sherrel Page (Page) which reduced the amount of a previous award by the Single Hearing Member.

We affirm.

CASE HISTORY—Page previously sought to have this court review the action of the Board reducing the award of the Single Hearing Member. This we refused to do because the Board's findings of fact were inadequate in that they did not specifically state whether Page's traumatic neurosis was connected with or due to the accident in which he sustained bodily injuries.

Accordingly, on June 14, 1972, this court in *Sherrel Page* v. *The Board of Commissioners of County of Clay* (1972), 152 Ind. App. 359, 283 N.E.2d 571, remanded this cause for further specific findings of fact and in compliance therewith the Board amended its findings of fact, which are set forth below.

So we proceed to review the Board's award on the merits. FACTS—The facts and evidence most favorable to the County are:

On January 4, 1966, Page was employed by the County as a highway construction engineer. En route to work on the morning of January 4, 1966, Page's truck stalled on the high-

way and he was struck and injured by an approaching automobile as he abandoned the stalled truck.

Page suffered multiple injuries—including injury to his back, left foot, right leg, right hip, and a cerebral concussion. At the hospital he was treated by Dr. M. E. Tomak (Dr. Tomak) who observed that Page was in a state of shock and exhibited symptoms of acute traumatic neurosis.

Page remained in the hospital for about nine days and did not return to work for the County for at least five weeks. During his sojourn there and for some time after his release, various medications and tranquilizers were prescribed by Dr. Tomak in an attempt to relieve Page's persisting nervous disorder. The cost of these prescriptions totaled approximately $1,100 for which Page did not receive reimbursement.

Resuming his job with the County, Page testified he experienced cold sweats and a compelling urge to run away "after a few seconds' exposure to traffic" and heavy equipment, so that he was unable to perform his duties as a highway construction engineer.

After unsuccessful settlement negotiations, a Single Hearing Member heard the case March 22, 1971, at which time Page contended his continuing nervous disorder (neurosis) prevented him from returning to his former employment and that this condition was the result of the January 4, 1966 accident.

Dr. Tomak testified at this hearing that his examination of Page after the accident revealed that in addition to physical injuries, Page experienced extreme nervous and hyperactive sensations as a result of neurogenic shock and a cerebral concussion, which he categorized as acute traumatic neurosis and for which he prescribed certain medications during the 80 to 100 times he attended Page. It was his opinion that his patient was, as a result of the accident, permanently impaired to the extent of 30% of the man as a whole, attributing 15% of the disability to traumatic neurosis arising out of the January 4, 1966 accident.

Another expert witness for Page was Dr. Gene Moore (Dr. Moore), a psychiatrist who examined Page three years after the accident. He testified as to the various symptoms of Page's neurosis and in effect concluded that his fears and irrationality came about because "Mr. Page had the hell scared out of him" by the accident and would probably continue to be afraid of traffic for some time to come. Dr. Moore also testified that Page would have difficulty performing any job requiring work close to traffic.

The only evidence produced by the County relevant to the neurosis question was an unsworn and unverified letter by a Dr. John R. Russell (Dr. Russell), to which no objection was made by Page. Five years after the accident Dr. Russell examined Page and expressed doubt that he could return to his employment as a highway construction engineer due to the neurosis, but flatly stated that Page had no permanent impairment attributable to the accident of January 4, 1966. (Page "has obvious psychological disorder, but this is not caused by the January 4, 1966 accident.")

After the evidence was presented, the Single Hearing Member entered an award in favor of Page for 20% permanent partial impairment, $45.00 per week for 100 weeks and compensation for all medical expenses incurred by Page.

On April 12, 1971, the County filed a Form 16 application seeking to have the award reviewed by the Board. The Board granted the County's application and reviewed the evidence, during which there was again no objection by Page to Dr. Russell's letter. On October 27, 1971, it reduced Page's award to 10% permanent partial impairment, granted him $45.00 per week for 50 weeks and refused to make any award for medical expenses incurred for the treatment of traumatic neurosis. The Board, however, failed to make a specific finding of fact as to whether Page's neurosis was caused by the acci-

dent—a defect now remedied by the Board which has amended its findings of fact to include the following:

"That plaintiff's (Page) alleged traumatic neurosis was not due to his accident of January 4, 1966.

"That the medical expenses of plaintiff which were not paid by the defendant (the County) were attributable to plaintiff's treatment for the alleged traumatic neurosis.

"That plaintiff is not entitled to a recovery against the defendant for the additional medical expenses and additional permanent partial impairment claimed by plaintiff as a result of his alleged traumatic neurosis."

Throughout these proceedings Page was represented by counsel.

## ISSUES

ISSUE ONE. Is the Board's finding that Page's traumatic neurosis was not due to the accident contrary to law because it was based on unsubstantial evidence which was contrary to other medical testimony?

ISSUE TWO. Is the award of the Board contrary to law because it failed to award Page compensation for medical expenses incurred in the treatment of his traumatic neurosis?

As to ISSUE ONE, Page argues the only evidence which did not show his traumatic neurosis to be the result of the accident was an "unsubstantiated, unexplained . . . conclusion" in Dr. Russell's letter. Other medical evidence presented by Page clearly established his traumatic neurosis to be the result of the accident.

The County replies that Page is merely asking this court to reweigh the evidence and that there was sufficient evidence before the Board to warrant its reduction of Page's original award.

As to ISSUE TWO, Page argues that since the Board found at least 10% permanent partial impairment, its award was contrary to law because it refused to make a provision for medical expenses which the evidence showed to have been a result of the January 4, 1966 accident.

The County, however, asserts that these medical expenses relate to treatment for traumatic neurosis and not physical injuries. Since the Board found Page's traumatic neurosis was not a result of the accident then it properly denied compensation for any medical expenses incurred by Page for treatment of the traumatic neurosis.

## DECISION

### ISSUE ONE.

CONCLUSION—It is our opinion that the award by the Board is not contrary to law because the evidence as to whether Page's traumatic neurosis resulted from the accident of January 4, 1966 was conflicting, and it had the right to weigh the evidence.

Because this court has repeatedly stressed the need for specific findings of ultimate facts by the Board so that this court may intelligently review an award, our first endeavor is to examine the Board's finding "that plaintiff's (Page) alleged traumatic neurosis was not due to his accident of January 4, 1966," and that he was not entitled to benefits relating to his traumatic neurosis. *Johnson* v. *Thomas & Skinner* (1972), 152 Ind. App. 136, 282 N.E.2d 346; *Robinson* v. *Twigg Industries* (1972), 151 Ind. App. 691, 281 N.E.2d 135; *Transport Motor Express* v. *Smith et al.* (1972), 279 N.E.2d 262; *Page* v. *Board of Commissioners of County of Clay, supra.*

With one exception, all the facts of this case are undisputed, *i.e.,* Page's employment, an accident occurring in the course of his employment, and bodily injury resulting from the accident of January 4, 1966. The exception is the Board's finding that Page's traumatic neurosis was not due to the accident—

for which finding Page contends there is no evidentiary basis. Examining the basic undisputed facts, and the reasonable inferences therefrom, in terms of the Board's ultimate factual finding that Page's traumatic neurosis was not due to the accident, we conclude that this factual finding is sufficiently specific to allow us to intelligently review the Board's negative finding in this respect. *Transport Motor Express* v. *Smith et al., supra.*

Our objective is to review decisions of administrative agencies with reference to specific findings of fact without resort to the evidence on which those findings are based. *Transport Motor Express* v. *Smith et al., supra; Carlton* v. *Board of Zoning Appeals* (1969), 252 Ind. 56, 245 N.E.2d 337.

Having concluded that the finding in question has the requisite specificity under these circumstances, we are thus forced to the next step, which is to examine its evidentiary foundation.

Superficially Page's dissatisfaction with the finding is plausible. Bearing the burden of proof, he presented testimony of two qualified physicians each of whom directly or indirectly concluded that his traumatic neurosis was a result of the accident. The Board then entertained, without objection, the letter from Dr. Russell who had examined Page five years after the accident, and it obviously relied on this hearsay statement in order to reach the conclusion that the neurosis was not caused by the accident.

Is the Board's finding fatally defective because it is founded on unsubstantial evidence to which no objection was interposed?

We think not.

The reasons are close at hand.

Ind. Ann. Stat. § 40-1512 (Burns 1965 Repl.), which provides for an "appeal" to this court for errors of law committed by the Board, provides *inter alia:*

"An award by the full board shall be conclusive and binding as to all questions of (the) fact, the either party * * * may * * * appeal to the Appellate Court for errors of law * * *."

In addition, there is a certain timeworn but honored rule of appellate procedure that a reviewing court will not weigh the evidence nor determine the credibility of witnesses. *George* v. *Interstate Metal Products, Inc.* (1955), 125 Ind. App. 406, 126 N.E.2d 258; *Espy* v. *Indianapolis Power & Light* (1932), 94 Ind. App. 184, 180 N.E. 190.

Administrative bodies such as the Industrial Board are not courts of law and are not held to strict rules of evidence. *McCoy* v. *General Glass Corp.* (1938), 106 Ind. App. 116, 17 N.E.2d 473; *T. J. Dye & Son* v. *Nichols* (1923), 81 Ind. App. 13, 141 N.E. 259; *Small, Indiana Workmen's Compensation Law*, § 12.6, at p. 386.

The thrust of Page's position is that there is insufficient evidence to support the negative part of the Board's award, i.e., that the traumatic neurosis was not caused by the accident. This brings him in conflict with the long established principle that challenge to a negative decision on the ground that there is insufficient evidence to support it, raises no question on review of that decision. *Ladd* v. *Review Board* (1971), 150 Ind. App. 632, 276 N.E.2d 871; *Dooley* v. *Richard's Standard Service* (1968), 145 Ind. App. 470, 251 N.E.2d 449.

Unless reasonable men could only reach a conclusion contrary to the Board's decision, we may not reverse. *Robinson* v. *Twigg Industries* (1972), 154 Ind. App. 339, 289 N.E.2d 733; *Tichenor* v. *Bryant Lumber Co.* (1970), 147 Ind. App. 382, 261 N.E.2d 78.

In our opinion there is no such basis for reversal.

Even were we to construe Page's argument as not being one as to the sufficiency of the evidence, but rather that the Board could not consider incompetent (hearsay) evidence, no objec-

tion was made by Page. In *Hinshaw* v. *Waddell* (1957), 128 Ind. App. 67, 142 N.E.2d 640, the court sustained an award of the Industrial Board, saying:

> "It is the rule in Indiana that where incompetent evidence has been admitted without objection or exception it may be considered upon appeal in determining the sufficiency of the evidence notwithstanding it should have been excluded upon proper and timely objection. Klingler v. Ottinger, 1939, 216 Ind. 9, 22 N.E.2d 805; Fetter v. Powers, 1948, 118 Ind. App. 367, 78 N.E.2d 555."

Incompetent evidence then may support a workmen's compensation award of benefits if the claimant fails to object to the incompetent evidence. Such waiver is in keeping with established practice in trial courts where evidentiary rules are even more strict. *Hinshaw* v. *Waddell, supra,* follows established practice in the trial courts and we see no logic or authority dictating a change for administrative agencies.

ISSUE TWO.

CONCLUSION—It is our opinion that it was not contrary to law for the Board to refuse to award Page compensation for medical expenses incurred in the treatment of his traumatic neurosis.

In its amended Findings of Fact, the Board found that Page's additional medical expenses related to his alleged traumatic neurosis which "was not due to his accident of January 4, 1966."

If the accident did not cause the traumatic neurosis, then the expense of treating that ailment could not be part of the award. The cause and its effect are inseparable.

The Board's award is therefore affirmed.

Sullivan and White, JJ., concur.