DEMICHAELI & ASSOCIATES, D/B/A THE CATTLEMEN'S RESTAURANT AND THE TRAVELERS INSURANCE COMPANY *v.* BEULAH SANDERS.

[No. 2-474A89. Filed January 28, 1976.]

John T. Rocap, Bruce M. Pennamped, Rocap, Rocap, Reese & Young, of Indianapolis, Edwin J. Bunny, of Indianapolis, for appellants.

Michael J. Tosick, of Greenfield, for appellee.

## CASE SUMMARY

BUCHANAN, P.J.—Defendant-Appellants, DeMichaeli & Associates, d/b/a The Cattlemen's Restaurant and The Travelers Insurance Company (DeMichaeli), seek review of an affirmative Award by the Full Industrial Board of Indiana (the Board) in favor of Plaintiff-Appellee, Beulah Sanders (San-

ders), granting compensation for the death of her husband, Charles Sanders (the Decedent), claiming the Findings of Fact were not specific enough for intelligent review, the Award was not supported by sufficient evidence, and erroneous rulings by the Board on certain questions asked during the hearing.

We reverse.

## FACTS

The facts and evidence before the Board most favorable to Sanders are as follows:

On May 16, 1972, the Decedent died as a result of injuries sustained in a two-car accident at the intersection of County Road 600 West (also known as the Mount Comfort Road) and County Road 100 North in Hancock County, Indiana. The Decedent was employed by DeMichaeli as a dishwasher and was enroute to DeMichaeli's office and warehouse located in Indianapolis, Indiana, at the time of the fatal accident.

On August 28, 1972, Sanders filed a Form 10 Application for Compensation with the Board. DeMichaeli responded with a General Denial and Special Answer which in part denied "that Plaintiff's decedent was injured in an accident arising out of and in the course of his employment with the Defendant" and further alleged "that no compensation should be allowed Plaintiff, as prayed for in her Form No. 10 Application for the reason that the alleged accident and alleged injuries received by Plaintiff's decedent on May 16, 1972, were proximately due to the commission by Plaintiff's decedent of a misdemeanor in violation of law."

The parties entered into a stipulation which in part read:

"That Charles L. Sanders died on May 16, 1972, as the result of injuries sustained in an automobile accident, which accident occurred at the intersection of County Roads 600 West and 100 North in Hancock County, Indiana; and that County Road 600 West is also known as the Mount Comfort Road.

"That prior to his death plaintiff's decedent was treated by doctors and was admitted to Hancock County Hospital and his final medical amounts to $208.05; that funeral and burial expenses exceeded the statutory maximum.

"That on May 16, 1972, plaintiff's decedent had been sent on an errand by his employer from his place of work in Hancock County to an office and warehouse owned and operated by the defendant in Indianapolis, Indiana, in the vicinity of 25th and Bolton; that plaintiff's decedent left his place of employment on the instruction of his supervisor in his own automobile, and took what could be considered an alternate direct route to his destination.

"That the accident resulting in plaintiff's decedent's death occurred at approximately 10:45 A.M. on May 16, 1972.

"That prior to the accident at the intersection previously mentioned the plaintiff's decedent was traveling west on County Road 100 North and a person by the name of Betty L. Estes was traveling north on County Road 600 West, also known as Mount Comfort Road; that the intersection of County Road 100 North and 600 West was regulated by stop signs for the east-west traffic and that traffic on County Road 600 West, also known as Mount Comfort Road, had the right-of-way and did not have to stop at the intersection.

"That the defendant had notice of the accident and death of plaintiff's decedent by actual knowledge on May 16, 1972."

At the hearing Jerry L. Owens, the investigating officer, testified that not only was the Decedent required to stop and yield the right of way, but below each stop sign on County Road 100 North on which Decedent was traveling was a warning sign stating that cross traffic (travelers on County Road 600 West . . . Estes) does not stop. Owens further testified that the speed limit on County Road 600 West was 55 miles per hour and that judging from the point of impact, the front wheel of Estes' car was across the center line of County Road 600 West at the time of collision.

Betty L. Estes (Estes) testified at the hearing that she approached the intersection at approximately 45 miles per hour headed north on County Road 600 West and that she first observed the Decedent's car "quite a ways away from the

intersection" because of the flat terrain. She also testified that she watched the Decedent's car until just before reaching the intersection, only looking away at that point to see if there were any oncoming cars. Although Estes did not observe the Decedent stop at the intersection, she only focused her attention away from his car after she thought he was stopping because as she stated, "his car bow[ed] like he hit the brakes."

The only other evidence relevant to the collision was Estes' answer to a hypothetical question posed by Sanders in which Estes testified that if she had known what was going to happen, i.e., that the Decedent was going to proceed into the intersection, at the point in time when she focused her attention away from the Decedent's car, she could have possibly avoided the collision.

On December 20, 1972, the Hearing Member awarded compensation to Sanders and DeMichaeli filed a Form 16 "Application for Review by the Full Board". Thereafter, on March 22, 1974, the Board entered the following Findings of Facts:

"That on October 22, 1973, the defendant, by its attorney, EDWIN J. BUNNY, filed its Motion to Return Cause for Hearing Before a Single Hearing Member to Permit a Witness to Answer Questions on Direct Examination which Motion is in the following words and figures, to-wit:

(H. I.)

and which Motion is hereby denied.

"That on the 16th day of May, 1972, plaintiff's decedent, Charles L. Sanders, was employed by the defendant, DeMichaeli and Associates d/b/a The Cattlemen's Restaurant; that the decedent's average weekly wage was in excess of the maximum.

"It is further found that the plaintiff, Beulah Sanders, was on the 16th day of May, 1972, the wife of the decedent by legal marriage in that on the aforesaid date she was the sole and only dependent of the said decedent.

"It is further found that the decedent died on May 16, 1972, as a result of injuries sustained in an automobile accident, which accident occurred at the intersection of

County Road 600 West and County Road 100 North in Hancock County, Indiana.

"It is further found that prior to his death, plaintiff's decedent was treated by doctors and was admitted to the Hancock County Hospital; that the medical expenses totaled $208.05; that the funeral and burial expenses incurred as a result of the decedent's death exceeded the statutory maximum;

"It is further found that the decedent had been, on the 16th day of May, 1972, sent on an errand by his employer from his place of work in Hancock County and that the plaintiff's decedent left his place of employment upon the direct instruction of his supervisor in his own automobile and traveled what could be considered an alternate direct route to his destination;

"It is further found that the accident resulting in Plaintiff's decedent's death occurred at approximately 10:45 A.M. on May 16, 1972; that the defendant had notice of the accident and death of the plaintiff's decedent by actual knowledge on May 16, 1972.

"It is further found that prior to the accident at the intersection previously mentioned, the plaintiff's decedent was traveling west on County Road 100 North and a person by the name of Betty L. Estes was traveling north on County Road 600 West, also known as Mt. Comfort Road; that the intersection of the said county roads 100 North and 600 west were regulated by stop signs for the east/west traffic and that traffic on County Road 600 West had the right-of-way and do not have to stop at the intersection.

"It is further found that Betty L. Estes did not see or remember seeing decedent failing to stop at the stop sign governing the preferential road and last reported observing the decedent's automobile as it approached the aforementioned intersection.

"It is further found that Betty L. Estes' last observation of the decedent's automobile indicated to her that the car was braking for the intersection.

"It is further found that, thereafter, Betty L. Estes ceased observation of the decedent's automobile and, thereafter, the collision occurred as previously found.

"It is further found that *an inference does exist that the decedent did not stop his vehicle at the posted stop sign at the intersection or, if he did stop, he did not grant the right-of-way to the vehicle driven by Betty L. Estes* but

this is only an inference and the commission of a misdemeanor was not established by the evidence.

"It is further found that *notwithstanding the evidence relating to the commission of a misdemeanor, the defendant has failed to prove that this misdemeanor, even if shown, proximately caused the decedent's death.*

"The Full Industrial Board now finds for the plaintiff and against the defendant on plaintiff's Form 10 Application filed herein on August 28, 1972." (Emphasis supplied)

DeMichaeli appeals.

## ISSUES

The issues on appeal requiring disposition are:[1]

ISSUE ONE    Were the Findings of Fact sufficiently specific to permit an intelligent judicial review of the Board's decision?

ISSUE TWO    Was the Board's Award contrary to law because DeMichaeli sustained his burden of proof that the Decedent's death was due to his commission of a misdemeanor in failing to stop or yield the right of way?

As to ISSUE ONE, DeMichaeli contends that the Board failed to make sufficient findings of fact as to the disputed issues to sustain its award. Instead the Board stated ultimate conclusions without setting forth the basic facts from which these conclusions were drawn.

Sanders retorts that the findings are clearly sufficient under current Indiana requirements . . . as set out in *Transport Motor Express, Inc.* v. *Smith* (1972), Ind. App., 289 N.E.2d 737, and later affirmed at (1974), 262 Ind. 41, 311 N.E.2d 424. Moreover, due to the nature of the Board's decision in this case, i.e., a negative award, the Board's findings need not be as specific as normally required to permit an intelligent judicial review.

---

1. Our resolution of *ISSUES ONE* and *TWO* obviates the necessity of considering the issue concerning certain exclusionary rulings made by the Board during the hearing.

:. As to ISSUE TWO, DeMichaeli contends that the Decedent's death was proximately caused by his commission of a misdemeanor, to-wit, his failure to stop or yield the right of way at the intersection where the fatal accident occurred. In granting compensation to Sanders, DeMichaeli argues that the Board ignored the evidence and the undisputed inferences flowing therefrom and therefore the Award is contrary to law.

Sanders responds that a misdemeanor was not proven by the evidence and that even if the Decedent's conduct amounted to a misdemeanor, it was not intentional and did not proximately cause the fatal collision.

## DECISION

### ISSUE ONE

CONCLUSION—It is our opinion that the Findings of Fact are sufficiently specific to permit a review of the case on its merits.

The central disputed issue in this case is raised by DeMichaeli's Special Answer, i.e., whether the Decedent's death was due to his commission of a misdemeanor in failing to stop or yield the right of way to Estes.

We only need specific findings from the Board which are basic to the ultimate facts upon which the parties have been unable to agree. *Transport Motor Express, Inc.* v. *Smith* (1972), Ind. App., 289 N.E.2d 737.

The Board has found sufficient facts to enable us to intelligently review the factual basis for its decision. While hardly a model of specificity the findings do indicate the facts on which the Board bases its legal conclusion, however erroneous, that DeMichaeli failed to prove the commission of a misdemeanor by the Decedent or that it proximately caused the Decedent's death.

., For recent discussions on this subject, *see, Bohn Aluminum & Brass Co.* v. *Kinney* (1973), 155 Ind. App. 164, 291 N.E.2d

705; *Transport Motor Express, Inc.* v. *Smith* (1972), Ind. App., 289 N.E.2d 737; *Transport Motor Express, Inc.* v. *Smith* (1974), 262 Ind. 41, 311 N.E.2d 424.

ISSUE TWO

CONCLUSION—It is our opinion that the decision of the Board is contrary to law in concluding that DeMichaeli failed to prove the Decedent's death proximately resulted from his commission of a misdemeanor in failing to stop or yield the right of way.

The Board's findings are remarkable. Reading them one is reminded of a trained horse who has methodically cleared each jump in the obstacle course and would logically be expected to sail over the last easy hurdle, but suddenly veers off on a frolic of his own. Pursuing its statutory duty to find the facts the Board *finds* that the two autos approached the intersection with the Estes' auto having the right of way (Obstacle One), the Board *finds* her observation of the Decedent's auto indicated he was braking for the intersection where he was required to stop (Obstacle Two), the Board *finds* an inference exists that the Decedent did not stop his vehicle at the posted stop sign at the intersection, or if he did stop, he did not grant the right of way to Estes (Obstacle Three), and then having no other logical alternative available the Board unreasonably concludes that:

> ". . . this is only an inference and the commission of a misdemeanor was not established by the evidence . . ." and ". . . notwithstanding the evidence relating to the commission of a misdemeanor, the defendant has failed to prove that this misdemeanor, even if shown, proximately caused the decedent's death."

To vary the metaphor, this is too fast a horse for us to ride. The reasons are relatively simple.

DeMichaeli had the burden of proving his Special Answer. IC 1971, 22-3-2-8 (Burns Code Ed.) in pertinent part provides:

*"Willful misconduct—self-inflicted injury—intoxication—
and Burden of Proof.*—No compensation shall be allowed
for any injury or death due to the employee's intentionally
self-inflicted injury, his intoxication, *his commission of a
felony or misdemeanor,* his willful failure or refusal to
use a safety appliance, his willful failure or refusal to
obey a reasonable written or printed rule of the employer
which has been posted in a conspicuous position in the place
of work, or his willful failure or refusal to perform any
statutory duty. *The burden of proof shall be on the defend-
ant.* [Acts 1929, ch. 172, § 8, p. 536]" (Emphasis added.)

Dean Small further explains:

"It is, of course, implicit that before any type of *mis-
conduct* will be held sufficient to bar a recovery of com-
pensation, it *must be the proximate cause of the harm for
which compensation is sought.*

\* \* \*

"Needless to say, the commission of a *misdemeanor must
be the proximate cause of the results* which follow; other-
wise, it is no bar." SMALL, WORKMEN'S COMPENSATION
LAW OF INDIANA § 11.1, pp. 316, 318 (citations omitted).
(Emphasis added.) *See also, Motor Freight Corporation* v.
*Jarvis* (1975), 163 Ind. App. 442, 451, 324 N.E.2d 500, 505-6
(and authorities cited therein).

Another statute, IC 1971, 9-4-1-110 (Burns Code Ed.),
provides that every driver shall stop or yield the right of
way in obedience to posted signs:

"(a) The state highway commission with reference to
state highway routes through cities, and local authorities
with reference to other highways under their jurisdiction,
may, upon an engineering and traffic investigation, desig-
nate through highways and erect stop or yield signs at
specific entrances thereto or may designate any intersection
as a stop or yield intersection and erect like signs at one
or more entrances to such intersection.

\* \* \*

"(c) *Every driver of a vehicle shall stop or yield in
obedience to any such sign* as the case may be, before enter-
ing such intersection except when directed to proceed
by a police officer or traffic control signal. . . ." (Emphasis
added.)

IC 1971, 9-4-1-83 (Burns Code Ed.) also provides:

"(a) The driver of a vehicle shall stop as required by this act [9-4-1-1—9-4-1-138] at the entrance to a through highway and shall yield the right of way to other vehicles which have entered the intersection from said through highway or which are approaching so closely on said through highway as to constitute an immediate hazard . . . ."

And violation of 9-4-1-110 or 9-4-1-83 above constitutes a misdemeanor as stated in IC 1971, 9-4-1-127 (Burns Code Ed.) :

"(a) It is a misdemeanor for any person to violate any of the provisions of this chapter [9-3-1-1—9-3-1-128] unless such violation is by this chapter or other law of this state declared to be a felony."

So DeMichaeli had the burden of proving that the Decedent committed a misdemeanor in failing to stop or yield the right of way and that his death was due to such misdemeanor. As the decision was against DeMichaeli on his Special Answer, this appeal is from a negative award.

The circumstances under which we will reverse such awards has been the subject of frequent judicial discussion, most of it unintelligible. Indiana courts have used a mixed jargon . . . undisputed, uncontradicted and uncontraverted evidence, reasonable inference and inescapable conclusions, and more generally, errors of law. Compare the cases reported in, 28 INDIANA DIGEST, WORKMEN'S COMPENSATION § 1939 (1953, Supp. 1975) ; SMALL, WORKMEN'S COMPENSATION LAW OF INDIANA § 12.14 (1950, Supp. 1968) ; IC 1971, 22-3-4-8 (Burns Code Ed.).

What seems to emerge from the cases is that if all the evidence before the Board is substantially without conflict,[2]

---

2. There may be a failure by the party with the burden of proof to produce some or any credible evidence to sustain the claim. *See, Tichenor* v. *Bryant Lumber Co.* (1970), 147 Ind. App. 382, 261 N.E.2d 78; *Dooley* v. *Richard's Standard Service* (1969), 145 Ind. App. 470, 251 N.E.2d 449; *Steele* v. *Anderson Co.* (1956), 126 Ind. App. 445, 133 N.E.2d 896; *Wright* v. *Peabody Coal Co.* (1948), 225 Ind. 679, 77 N.E.2d 116.

or the Board has made findings from conflicting evidence in support of its decision, and such evidence or findings support only one reasonable inference or conclusion, which is contrary to the Board's conclusion, then its decision must be reversed. *See, Page* v. *Board of Commissioners of County of Clay* (1973), 155 Ind. App. 215, 292 N.E.2d 254; *Smith* v. *Graver Tank & Mfg. Co.* (1973), 158 Ind. App. 431, 302 N.E.2d 852; *Lincoln* v. *Whirlpool Corp.* (1972), 151 Ind. App. 190, 279 N.E.2d 596; *Davis* v. *Webster* (1964), 136 Ind. App. 286, 198 N.E.2d 883; *Warren* v. *Indiana Telephone Co.* (1940), 217 Ind. 93, 26 N.E.2d 399. *Also See,* 28 INDIANA DIGEST, *supra,* § 1939; SMALL, *supra,* § 12.14.

In reviewing the Board's decision, our search then is to determine if the Board has rejected the only reasonable inference arising from the evidence and its findings. Immediately there appears to be a redundancy because an inference is usually defined as a reasonable or logical deduction. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY defines an inference in terms of "reasoning". BLACK'S LAW DICTIONARY (4th ed. 1968) similarly describes an inference:

"A truth or proposition drawn from another which is supposed or admitted to be true. *A process of reasoning* by which a fact or proposition sought to be established is deduced *as a logical consequence from other facts,* or a state of facts, already proved or admitted." (Emphasis supplied.)

But courts generally ignore the redundancy . . . and so shall we. *See, Pierce* v. *State* (1974), 161 Ind. App. 217, 315 N.E.2d 376; *Taylor* v. *Fitzpatrick* (1956), 235 Ind. 238, 244, 132 N.E.2d 919; *Magazine* v. *Shull* (1945), 116 Ind. App. 79, 85, 60 N.E.2d 611; *Odd Fellows Cemetery* v. *Daniels* (1941), 109 Ind. App. 127, 130, 33 N.E.2d 357. *See also,* 36 WORDS AND PHRASES, *Reasonable Inference* (1962, Supp. 1975); 21 WORDS AND PHRASES, *Inference* (1960, Supp. 1975).

The important underlying concept is that the reasonableness of an inference is determined by whether the inferred fact

is a *probable* hypothesis from the proven facts and circumstances in light of common knowledge and experience. *See, Samora* v. *Bradford,* 81 N.M. 205, 465 P.2d 88, 90 (1970) ; *Lambe* v. *Reardon,* 69 N.J. Super. 57, 173 A.2d 520, 525 (1961) ; 36 WORDS AND PHRASES, *supra.* *Cf. Harrison* v. *Daniels* (1970), 147 Ind. App. 666, 672, 263 N.E.2d 288; *Taylor* v. *Fitzpatrick, supra; Magazine* v. *Shull, supra; Cleveland, etc., R. Co.* v. *Starks* (1914), 58 Ind. App. 341, 356, 106 N.E. 646. Conversely, an unreasonable inference is one that is *not* probable . . . not likely to be true . . . given the proven facts and circumstances in light of common knowledge and experience. *See, Pavach* v. *State* (1971), 149 Ind. App. 293, 306-7, 271 N.E.2d 896 (dissenting opinion by J. Sullivan) ; *Marshall* v. *Tribune-Star Publishing Co., Inc.* (1968), 142 Ind. App. 556, 563, 236 N.E.2d 508; *Kestler* v. *State* (1949), 227 Ind. 274, 308, 85 N.E.2d 76 (dissenting opinion by J. Gilkison). An unreasonable inference results in action that is arbitrary or capricious and which is based on speculation, guess, surmise, conjecture or mere possibility. *See, Dudley Sports Co.* v. *Schmitt* (1972), 151 Ind. App. 217, 230, 279 N.E.2d 266; *A.S.C. Corporation* v. *First National Bank of Elwood* (1960), 241 Ind. 19, 26, 167 N.E.2d 460; *Prudential Life Insurance Company* v. *Spears* (1954), 125 Ind. App. 21, 24, 118 N.E.2d 813; *Rohlwing* v. *The Wm. H. Block Company* (1953), 124 Ind. App. 97, 102, 115 N.E.2d 450; *Mishawaka Rug & Woolen Mfg. Co.* v. *Walker* (1949), 119 Ind. App. 309, 314, 84 N.E.2d 897; *Kestler* v. *State, supra.* "The only kind of an inference recognized by the law is a *reasonable* one". *Parker* v. *Great Atlantic & Pacific Tea Co.* (N.D. Ind. 1957), 146 F.Supp. 871, 873.

Professor Davis puts it this way:

The question for the reviewing court is thus whether the [Board's] conclusions "reasonably may be based upon the facts proven." The Court may not substitute its judgment on the question whether the inference drawn is the right one or whether a different inference would be better supported. *The test is reasonableness, not rightness.* 4 DAVIS,

ADMINISTRATIVE LAW TREATISE § 29.05, p. 139 (1958). (Our emphasis.)

If the Board has rejected the only reasonable inference possible in light of common knowledge and experience, it has reached an unsupportable conclusion. The question then becomes one of law for the reviewing court and is removed from the area of administrative discretion. *See,* 4 DAVIS, *supra,* § 29.05, pp. 139-141. *Cf., Haney* v. *Meyer* (1966), 139 Ind. App. 663, 668, 215 N.E.2d 886. The Board's right is to find the facts which includes the right to make *permissible* inferences, IC 1971, 22-3-4-8 (Burns Code Ed.), 4 DAVIS, *supra.* Otherwise it will be reversed.

Here the Board in its findings acknowledges the inference exists "that the decedent did not stop his vehicle at the posted stop sign at the intersection or, if he did stop, he did not grant the right of way to the vehicle driven by Betty L. Estes. . . ." It then proceeds to find that "this is only an inference and the commission of a misdemeanor was not established by the evidence." This conclusion is meaningless verbosity.

The Board further finds that "notwithstanding the evidence relating to the commission of a misdemeanor, the defendant has failed to prove that this misdemeanor, even if shown, proximately caused the decedent's death."

From the record it would appear the Board "inferred" that Mrs. Estes' conduct in looking away from the Decedent's car just before reaching the intersection amounted to negligence which was an intervening cause of the fatal accident . . . an unsupportable conclusion.

There was no evidence that Estes acted negligently in looking away from the Decedent's car just before reaching the intersection. Negligence, as a general rule, only encompasses that conduct which falls *below* the standard to which an ordinary and reasonable person in like or similar circumstances would conform for his own protection and

which contributes as a *legal cause,* i.e., a proximate and direct rather than a remote cause, of the harm. *See, McCall* v. *Sisson* (1975), 166 Ind. App. 403, 336 N.E.2d 660; *Memorial Hospital of South Bend, Inc.* v. *Scott* (1973), 261 Ind. 27, 300 N.E.2d 50, 56; *Metz* v. *Madison* (1971), 149 Ind. App. 157, 271 N.E.2d 197; *Huey* v. *Milligan* (1961), 242 Ind. 93, 175 N.E.2d 698.

The uncontradicted evidence established that Estes acted in a reasonable manner at all times prior to the collision . . . her speed was well within the posted speed limit, she first observed the Decedent's car some distance from the intersection, she continued observing his car while approaching the intersection, and she focused her attention away from his car just before reaching the intersection to check for oncoming traffic only after she thought he was stopping because as she stated, "his car bow[ed] like he hit the brakes." Hardly negligent conduct. *Cf. Campbell* v. *Hammontree* (1975), 163 Ind. App. 160, 322 N.E.2d 725 (and cases cited therein).

Administrative bodies such as the Industrial Board are not courts of law and are not held to strict rules of evidence, but they may not reach conclusions which are contrary to law. *See, Page* v. *Board of Commissioners of County of Clay* (1973), 155 Ind. App. 215, 292 N.E.2d 254; *McCoy* v. *General Glass Corp.* (1938), 106 Ind. App. 116, 17 N.E.2d 473; *T. J. Dye & Son* v. *Nichols* (1923), 81 Ind. App. 13, 141 N.E. 259; SMALL, WORKMEN'S COMPENSATION LAW OF INDIANA § 12.6, p. 386.

The only reasonable inference supportable by the Board's findings and the evidence, leads inescapably to the conclusion that the Decedent's death was due to his commission of a misdemeanor in failing to stop or yield the right of way at the intersection of County Road 600 West and County Road 100 North.

This principle was enunciated in *Price* v. *Reed* (1943), 114 Ind. App. 253, 51 N.E.2d 86;

"When the commission of a misdemeanor is the proximate cause of a collision in which an employee is injured or killed, compensation must, under the statute, be denied. The question, when the facts are undisputed and of such character that but a single inference can be drawn therefrom by any fair and reasonable mind, is one of law for the Court, otherwise one of fact." 114 Ind. App. at 258, 51 N.E.2d at 88 (citations omitted). *Also see, Gary Railways v. Garling* (1949) 120 Ind. App. 36, 88 N.E.2d 571; *Anti-Mite Engineering Co. v. Peerman* (1943), 113 Ind. App. 280, 46 N.E.2d 262; *Phillips v. Jackson* (1925), 83 Ind. App. 135, 147 N.E. 818; *McCall v. Sisson, supra. Wood v. Snyder* (1925), 83 Ind. App. 31, 147 N.E. 314.

Sanders' argument regarding the unintentional nature of the misdemeanor as a mitigating factor is not persuasive. The statute, IC 1971, 22-3-2-8 (Burns Code Ed.), *supra,* only specifies willful misconduct as to self-inflicted injuries, refusal to use a safety appliance or to obey a printed rule of the employer or obey a statutory duty. The language of this statute as it now stands, and as it has existed in prior versions, is not elastic enough to require the application of ·"willful and intentional" to the specified defenses of intoxication, felony, and misdemeanor. Indiana courts rejected this contention long ago, and held that with respect to the offenses embodied within safety statutes . . . including traffic regulations . . . , the act itself is forbidden without need of willful or specific intent. See, *Price v. Reed, supra,* 114 Ind. App. at 258-9, 51 N.E.2d 86; SMALL, *supra* § 11.1, p. 318. *Cf. Gary Railways v. Garling, supra,* 120 Ind. App. at 40, 88 N.E.2d 571; *Hayes Freight Lines v. Martin* (1949), 119 Ind. App. 97, 99, 84 N.E.2d 205.

Nor can Sanders find solace in *Kuhner Packing Co. v. Hitchens* (1933), 97 Ind. App. 228, 186 N.E.2d 262, or *Kariger Motors, Inc. v. Kariger* (1961), 132 Ind. App. 85, 173 N.E.2d 916. In *Kuhner* the court did not modify the misdemeanor by requiring it to be "willful", and denied the employer's appeal because he had known and acquiesced in the employee's violations of the safety statute. The rule itself placed an

affirmative duty on the employer to notify his employees of the forbidden acts and there was no showing that the deceased employee had knowledge of the violated rule. The *Kariger* court also declined to imply that the misdemeanor be willfully committed. It disposed of the appeal by finding conflicting inferences as to both the commission of the misdemeanor and whether it proximately caused the fatal collision.[3]

Cases involving conflicting reasonable inferences as to what proximately caused the employee's injury are to be distinguished. *See, Motor Freight Corp.* v. *Jarvis, supra; Kariger Motors, Inc.* v. *Kariger* (1961), 132 Ind. App. 85, 173 N.E.2d 916; *Hayes Freight Lines* v. *Martin* (1949), 119 Ind. App. 97, 84 N.E.2d 205; *Anti-Mite Engineering Co.* v. *Peerman, supra.* *See Also, Metz* v. *Madison, supra; Campbell* v. *Hammontree, supra; McCall* v. *Sisson, supra.*

Therefore, as reasonable men could *only* conclude that the Decedent's death was proximately caused by his commission of a misdemeanor the question is one of law, and compensation should be denied and the Board's decision must be reversed.

Reversed.

Sullivan, J., concurs; White, J., concurring and dissenting with opinion.

## CONCURRING AND DISSENTING OPINION

WHITE, J.—Although I agree that the facts found by the board compel the conclusion that decedent's death was due to his failure to yield the right of way and that such failure is a misdemeanor, so far as the criminal law is concerned, I cannot agree that it compels disallowance of compensation

---

3. We note the writings of some commentators in support of Sanders' position. *See* "A Suggestion on the Misdemeanor" in the 1968 Cumulative Supplement to SMALLS, WORKMEN'S COMPENSATION LAW OF INDIANA § 11.1, pp. 88-91. However, the legislature has also heard these arguments, observed the judiciary's interpretation of IC 1971, 22-3-2-8 (Burns Code Ed.) in *Kuhner Packing Co.* v. *Hitchens* (1933), 97 Ind. App. 228, 186 N.E. 262 and *Price* v. *Reed* (1943), 114 Ind. App 253, 51 N.E.2d 86 and has remained silent since 1929 when section 8 (IC 1971, 22-3-2-8 (Burns Code Ed.)) took substantially its present form.

unless it is, *in truth and in fact,* wilful misconduct. I read section 8[1] of the Workmen's Compensation Act as compelling disallowance of compensation only for specified examples of *wilful* misconduct listed therein, not as making a negligent but unintentional commission of a traffic violation *wilful* misconduct as a matter of law when in truth and in fact there is nothing wilful about it at all. Insofar as *Price* v. *Reed* (1943), 114 Ind. App. 253, 51 N.E.2d 86, can be understood as holding otherwise, it should be overruled.[2]

The intent of the Legislature to disallow compensation *only* for *wilful* misconduct is clearly apparent in the original version of section 8 in the first Indiana Workmen's Compensation Act, Acts 1915, Chapter 106, which read:

"Wilful Misconduct—Self Inflicted Injuries.

"Sec. 8. No compensation shall be allowed for an injury or death due to the employe's wilful misconduct, including intentional self-inflicted injury, intoxication, and wilful failure or refusal to use a safety appliance, or perform a duty required by statute.

"The burden of proof shall be on the defendant employer."

The court in *Northern Ind. Gas., Etc.* v. *Pietzvak* (1917), 69 Ind. App. 24, 31, 118 N.E. 132, had no problem before it like the one I see herein, but what is said therein clearly indicates that it understood that everything specified in that section was *wilful* misconduct *in fact.* The court said:

"The language of said section indicates that the legislature did not intend that all forms of wilful misconduct

---

1. Section 8 is Ind. Ann. Stat. § 22-3-2-8 (Burns Code Ed., 1973), which is the disqualifying section quoted verbatim in the majority opinion.

2. My concern here is only with the proper interpretation of the Workmen's Compensation Act to effectuate its humane purpose. I am quite willing to concede, *arguendo,* that a motorist prosecuted in a criminal action for failure to yield the right of way quite properly can be convicted of a misdemeanor even though the convicting court or jury is convinced by the evidence that he did not know he was failing to yield. "In such cases the only intent necessary to the commission of the offense is the intent to do the prohibited thing." *Price* v. *Reed, supra,* 114 Ind. App. at 258.

other than those mentioned therein should be excluded and disregarded, or that nothing else should be regarded as constituting wilful misconduct. On the contrary, said language indicates that the legislature was sensible of the fact that other forms of wilful misconduct *might* be recognized, but wanted to make sure that those specified *would* be recognized in the administration of said act." (Italics in original.)

In 1919 the section was amended to read:

"Wilful misconduct, self-inflicted injuries.—8. No compensation shall be allowed for an injury or death due to the employee's intentionally self-inflicted injury, his intoxication, his commission of a felony or misdemeanor, his wilful failure or refusal to use a safety appliance, his wilful failure or refusal to obey a reasonable written or printed rule of the employer which has been posted in a conspicuous place, his wilful failure or refusal to perform any statutory duty, *or to any other wilful misconduct on his part*. The burden of proof shall be on the defendant." (My italics.)

In the above quoted 1919 version of section 8, the phrase I have italicized makes obvious that its legislative draftsmen believed that all the examples of disqualifying misconduct which precede that phrase are examples of wilful misconduct. Thus when they added to those examples "his commission of a felony or misdemeanor" they obviously believed they were specifying a form of wilful misconduct. If they had intended that the unintentional commission of a misdemeanor, such as a thoughtless failure to observe a rule of the road, would forfeit the right to compensation, it would have been illogical for them to have worded their catch-all clause as they did. The phrase "any other wilful misconduct" is not an accurate statement unless that which precedes it is also wilful misconduct

When the 1929 Act (Chapter 172) replaced the 1915 Act section 8 took its present form which is almost identical to the 1919 amendment except that the catch-all phrase "or any other wilful misconduct on his part" was deleted. That deletion had the effect of reversing the all inclusive *Pietzvak, supra,* interpretation of the original section 8. It made mani-

fest the intent of the legislature that no longer should *every* form of wilful misconduct prohibit the allowance of compensation. Thereafter only the forms of *wilful* misconduct specified would prohibit compensation. This was obviously a liberalizing victory for the laboring man and woman and is no evidence of a legislative intent to depart from the principle that it is *wilful* misconduct which forfeits the right to compensation. The unarticulated premise of both *Kuhner Packing Co.* v. *Hitchens* (1933), 97 Ind. App. 228, 186 N.E. 262, and *Kariger Motors, Inc.* v. *Kariger* (1961), 132 Ind. App. 85, 173 N.E.2d 916, is that the employee's misconduct must be *wilful* for it to prohibit allowance of compensation.

I must also note that the majority discussion of whether Mrs. Estes was negligent is wholly unnecessary. Whether her conduct was or was not negligent and whether it was or was not a proximate cause of the collision have no bearing on whether decedent's failure to stop or yield the right of way was the proximate cause of his death. *Gerow* v. *Hawkins* (1934), 99 Ind. App. 352, 355, 192 N.E. 713, 714.

On reversal and remand the board should be directed to make a complete and proper finding of the relevant specific facts on the issue of wilful misconduct, to the extent those facts have been proven by a preponderance of the evidence, and to enter an award accordingly.

NOTE.—Reported at 340 N.E.2d 796.