GREAT LAKES DREDGE AND DOCK COMPANY *v.* TOTZKE
ET AL.

[No. 10,314.    Filed January 31, 1919.]

1. MASTER AND SERVANT.—*Workmen's Compensation Act.—Injuries Arising Out of Employment.*—In a proceeding under the Workmen's Compensation Act, Acts 1915 p. 392, §80201 *et seq.* Burns' Supp. 1918, to recover for the death of a servant who was struck by a locomotive engine while proceeding to his work through the yards of a steel company for which his employer was doing certain construction work, the facts found by the board *held* to war-

rant the conclusion that the workmen's injuries resulting in his death arose out of his employment. p. 308.

2. EVIDENCE.—*Undisputed Evidence.—Weight and Sufficiency.*—A fact cannot be taken as established by undisputed evidence merely because the testimony of a witness in relation thereto is not directly controverted, where such testimony is so inconsistent with other facts and circumstances shown by the evidence as to have little or no weight, or so inherently improbable that it amount to mere conjecture. p. 308.

3. MASTER AND SERVANT.—*Workmen's Compensation Act.—Proceedings for Award.—Weight of Evidence.—Province of Industrial Board.*—In a proceeding for compensation under the Workmen's Compensation Act, Acts 1915 p. 392, §80201 *et seq.* Burns' Supp. 1918, it is the exclusive province of the Industrial Board to consider testimony and give it such weight as in the judgment of the board is proper, and its conclusion in this respect is conclusive. p. 309.

4. MASTER AND SERVANT.—*Workmen's Compensation Act.—Injuries Arising Out of and in Course of Employment.*—In a proceeding under the Workmen's Compensation Act, Acts 1915 p. 392, §80201 *et seq.* Burns' Supp. 1918, the question whether the injury or death arises out of and in the course of the employment within the meaning of the act does not depend on the minute details of what the workman was doing at the time of the accident, or how he was doing it, or whether he was in any manner at fault, but rather upon whether the injury or death was due to a hazard to which the workman would not have been exposed apart from the business in which he was employed. p. 309.

5. MASTER AND SERVANT.—*Workmen's Compensation Act.—Injuries Arising Out of and in Course of Employment.*—Personal injury arising out of and in the course of employment within the meaning of the Workmen's Compensation Act, Acts 1915 p. 392, §80201 *et seq.* Burns' Supp. 1918, includes injuries to employes whose services are being performed about the premises occupied, used or controlled by the employer, and at places where their employer's business requires their presence and subjects them to dangers incident to the business. p. 309.

6. MASTER AND SERVANT.—*Workmen's Compensation Act.—Injury Due to Intoxication.*—Though a workman's injury arose out of his employment, there can be no award of compensation in a proceeding under the Workmen's Compensation Act, Acts 1915 p. 392. §80201 *et seq.* Burns' Supp. 1918, where the injury was due to the employe's intoxication, in view of §8 of the act. p. 310.

From the Industrial Board of Indiana.

Proceedings for compensation under the Workmen's Compensation Act by Anna Totzke and others against the Great Lakes Dredge and Dock Company. From an award for applicant, the defendant appeals. *Affirmed.*

*W. J. Whinery*, for appellant.
*Joseph J. Sullivan*, for appellees.

DAUSMAN, C. J.—For about twenty-five years one Anton Totzke was in the employ of appellant, as a workman. On April 25, 1918, he came to his death under the circumstances hereinafter stated. His widow and minor child, as sole dependents, applied to the Industrial Board for an award of compensation. Answer in two paragraphs: (1) General denial; and (2) that the injury which caused the workman's death was due to his intoxication. The board heard the evidence and made an award. Appellant contends: (1) That the workman's death did not arise out of the employment; and (2) that it was due to his intoxication.

In its finding the board included the following facts: "On and prior to the 24th day of April, 1917, the Inland Steel Company was a corporation owning and operating a steel plant at Indiana Harbor, in Lake County, Indiana. The plant of said Inland Steel Company covered a very large tract of ground, the exact size of which is not shown by the evidence. At said time and prior thereto the plant of the said Inland Steel Company was inclosed by a fence. On said date and prior thereto the Great Lakes Dredge & Dock Company, under contract with the Inland Steel Co., was engaged in driving piles on the Lake Michigan front of the plant of the Inland Steel Co.

and within the enclosure of the Inland Steel Co. The employes of the Great Lakes Dredge & Dock Co. at said time were admitted to the plant of the Inland Steel Co. upon cards or passes issued to them by the Great Lakes Dredge & Dock Co. Said employes were required to enter the Inland Steel Co. enclosure at a gate known as the Baltimore Avenue gate. Only the employes of the Great Lakes Dredge & Dock Co. and automobiles and other vehicles were admitted at said gate at said time. On the 24th day of April, 1917, one Anton Totzke was in the employment of the Great Lakes Dredge & Dock Co. at an average weekly wage of $21.80; and at said time he was employed by the Great Lakes Dredge & Dock Co. in the work of driving piles and constructing a foundation for the said Inland Steel Co. at the point heretofore designated. Within the enclosure of the Inland Steel Company there is a net-work of railroad tracks, the exact number of which is not shown by the evidence. From the Baltimore Avenue gate of the Inland Steel Co. a stone and cinder road, for the use of vehicles and pedestrians, leads to the west across many of the railroad tracks in the Inland Steel Co. plant, a distance of about one-half a mile, and this road is the proper route over which the employes of the Great Lakes Dredge & Dock Co. should pass from the Baltimore Avenue gate in proceeding from said point to the point where the Great Lakes Dredge & Dock Co. was driving its piles and constructing the foundation hereinbefore mentioned. On the evening of the 24th of April, 1917, the said Anton Totzke, in company with two other employes of the Great Lakes Dredge & Dock Co., appeared at the Baltimore Avenue gate of the Inland Steel Co. and presented their passes

to the gate-keeper, an employe of the Inland Steel
Co., and were admitted into the plant of the said
Inland Steel Co. The three employes proceeded west-
ward upon said highway a short distance, the exact
length of which is not shown by the evidence, to a
track upon which was a locomotive engine of the
Illinois Central Railroad Co., which had been leased
to the Great Lakes Dredge & Dock Co.; and at said
point the two employes, who were in company with
the said Anton Totzke, boarded said engine and rode
from said point to the point where the Great Lakes
Dredge & Dock Co. was driving this piling and con-
structing the foundation as hereinbefore mentioned.
When said two employes boarded the said locomotive
the said Anton Totzke was standing in the highway
filling his pipe; and from said point the said Anton
Totzke proceeded westward upon the roadway here-
inbefore mentioned, and on his way to his work at
the point where the Great Lakes Dredge & Dock Co.
was driving piling and constructing the aforesaid
foundation. While traveling westward on said road
and when passing over the point where one of the
railroad tracks crosses said road, the said Anton
Totzke was struck by a locomotive or by the cars
attached thereto, switching upon said railroad track,
and was dragged back toward the Baltimore Avenue
gate; and in said collision his skull was fractured,
three ribs were broken, and both his legs were severed
below the knee joints. At the time Anton Totzke
entered the plant of the Inland Steel Company on
April 24, 1917, at the Baltimore Avenue gate, there
were nine standard-gauge locomotive engines and
two narrow-gauge locomotive engines switching back-
ward and forth upon said railroad tracks and across

the highway upon which the said Totzke was traveling; and in traveling from the said Baltimore Avenue gate to the point where he was to perform his work for the Great Lakes Dredge & Dock Co., he was necessarily exposed to the danger of being struck by said locomotive engines at the points where said railroad tracks crossed said road.''

The evidence tends fairly to support the facts above stated. Indeed there is little, if any, conflict in the evidence with reference to any of said facts. That the workman's injury which resulted in his death arose out of his employment is a legitimate conclusion to be drawn from said facts.

Counsel for appellant contends that there is *undisputed* evidence showing that before the accident the workman was seen going westward toward the particular spot where his work was to be performed, and soon thereafter was seen retracing his steps eastward toward the place where he was found after the accident; that the only inference that can be drawn from the evidence on this point is that he was proceeding eastward with the intention of going out of the plant of the Inland Steel Company for some purposes wholly his own and in no way connected with the employment; and that, therefore, the ultimate conclusion must be that his injury and death did not arise out of the employment. The testimony of the witness Mr. Anderson tends to prove what counsel claim it does prove, and, in the sense that no other witness testified that Mr. Anderson did not see what he claims to have seen, Mr. Anderson's testimony is undisputed. But the testimony of a witness may be so inherently weak as to be unable to stand against the facts shown by other evidence and the

inferences to be drawn therefrom; or it may be so inconsistent with other facts and circumstances as to have little or no weight; or it may be so inherently improbable that it amounts to mere conjecture. It was the exclusive province of the Industrial Board to consider Mr. Anderson's testimony in connection with all the other evidence and to give it such weight as in the judgment of the members of the board was fairly attributable thereto. In that respect we cannot disturb the action of the board; for there are many facts and circumstances in evidence which are inconsistent with his testimony. Furthermore, if it were conceded that when the accident occurred the workman was going eastward, away from the particular point where his work was to be performed, that fact would not necessarily defeat an award.

In all these cases the question whether the injury or death arises out of and in the course of the employment does not depend on the minute details of what the workman was doing at the time of the accident, or how he was doing it, or whether he was in any manner at fault. It depends rather on the broader and simpler question whether the injury or death was due to a hazard to which the workman would not have been exposed apart from the business in which he was employed. See *Dow's Case* (1918), 231 Mass. 348, 121 N. E. 19. The Workmen's Compensation Law of the State of Iowa contains the following declaration: ''The words 'personal injury arising out of and in the course of such employment' shall include injuries to employes whose services are being performed on, in or about the premises which are

occupied, used or controlled by the employer, and also injuries to those who are engaged elsewhere in places where their employer's business requires their presence and subjects them to dangers incident to the business.'' There is much sense and wisdom in this legislative interpretation of a group of words which has caused the courts no end of trouble. It will be observed that the idea of place is the controlling feature of this interpretation, and we approve and adopt it. When Totzke entered the inclosure of the Inland Steel Company undoubtedly he was in a place where his employer's business required him to be, and so long as he remained in that place he was exposed to certain inherent dangers to which he would not have been exposed apart from the business of his employer. By one of the inherent hazards of that place he was fatally injured, and the Industrial Board was justified in finding that the injury which resulted in his death arose out of the employment.

Was the workman's injury which resulted in his death due to his intoxication? If so, there can be no award, even though his death arose out of the employment. §8, Acts 1915 p. 392, §80201 *et seq.* Burns' Supp. 1918. On this point the board made the following finding: ''The said Anton Totzke was not intoxicated at the time of his injury, and his injury and death were not due to his intoxication.''

The most that can be said in favor of appellant's contention that the workman was intoxicated at the time of the accident is that the evidence relating thereto is conflicting.

The award is affirmed, and by virtue of the statute the amount thereof is increased five per cent.