333 N.E.2d 324 (1975)
WHISPERING PINES HOME FOR SENIOR CITIZENS, Appellant,
v.
Thelma Joan NICALEK, Appellee.
No. 2-1173A252.
Court of Appeals of Indiana, Second District.
September 4, 1975.
*325 Larry G. Evans and Karen L. Hughes, Chester, Clifford, Hoeppner & Houran, Valparaiso, Rudy Lozano, Spangler, Jennings, Spangler & Dougherty, Gary, for appellant.
John A. Hovanec, Gary, for appellee.
WHITE, Judge.
This is the second appeal of an award of workmen's compensation benefits to the appellee. On the first appeal we reversed and remanded because the Industrial Board's findings of fact lacked sufficient specificity to enable us to make an intelligent review. Whispering Pines Home for Senior Citizens v. Nicalek (1973), Ind. App., 300 N.E.2d 669, 38 Ind.Dec. 394.
On remand the Board reentered, under the caption "Corrected Award", its previous recitals, findings and award and added to its "findings" these three paragraphs:
"That at the hearing, it was stipulated and agreed by the parties that Exhibits 1 and 2 be admitted and made a part of the record.
"That the date of the alleged accident is November 9, 1968. That the claimant was compensated at the rate of $1.35 per hour. That at the time of the alleged accident, the claimant was an employee of Whispering Pines Home for Senior Citizens. The evidence considered by the Board in this case is that the plaintiff testified:
"That while working as a nurses' aid, she helped two (2) other female employees lift an elderly man from the floor. The plaintiff alleges that as a result of the exertion she sustained injuries to her lower back. However, at the time of the exertion, the plaintiff testified that she felt no pain and continued working until the end of her shift, seven o'clock the following morning, November 10, 1968. Upon arriving home, she testified that she went to bed for approximately three (3) hours and awakened around twelve o'clock noon. At that time, she first felt pain in her lower back. The following two (2) days were her regular days off. She returned to work on November 12, 1968, and at that time first reported the incident to the supervising nurse. She worked the remainder of her four days, the last day being the morning of November 16, 1968. She then went to see Dr. Kilmer, her family physician, without the specific authorization of her employer. Dr. Kilmer referred the plaintiff to Dr. Leon Armalavage. He first examined the patient on December 31, 1968. As a result of his examination Dr. Armalavage concluded that she had a lumbosacral sprain. The plaintiff returned to work on February 1, 1969, and continued working until March, 1970, a thirteen month period. On August 31, 1970, she was examined by Dr. Edward A. Mladick. He found that, `some of her back complaints are on a postural basis and that some are due to the degenerative disease at the lumbosacral level which appears to have existed prior to her injury.' He further stated *326 that `the injury in November, 1968, did not introduce a permanent impairment or permanently aggravate a pre-existing condition.' On December 21, 1970, she was admitted into Porter Memorial Hospital by Dr. Kilmer, he again requested that Dr. Armalavage see her. On December 22, 1970, Dr. Armalavage conducted an exploratory operation on her back. A narrow degenerated disk with some bulge to it was found at L4-5 level on the right side. The disk at L5-S1 was also explored and found to be normal in appearance and was not disturbed. The plaintiff was then discharged from the hospital on January 2, 1971. On February 15, 1971, Dr. Armalavage last viewed the patient and stated at that time `... it would be dangerous for her to go back to lifting patients this soon after her surgery.' He did not relate her condition to the alleged accident of November 9, 1968."
The first above quoted paragraph tells us only that the parties agreed that two exhibits should be made a part of the record. It does not tell us whether the Board found any fact or facts to be true as a result of this stipulation to admit exhibits, whatever they were. The brief suggests that these exhibits were the medical reports of two doctors (Armalavage and Mladick) whose findings and conclusions are mentioned in the third paragraph, but neither this first paragraph of "findings" or the third paragraph tell us whether the board found anything stated in either or both of those reports to be a fact.
To the extent that the first three sentences of the second paragraph find facts, they find ultimate facts which were never in dispute. (Whether plaintiff sustained an accident is in dispute but these sentences find no accident; merely the date of an alleged accident.)
The last sentence of the second paragraph and the third paragraph are findings of but one fact, that plaintiff testified to everything that is stated in paragraph three. However, the briefs and the record make it clear that this is not so; that, instead, the statements in paragraph three attributed to the doctors are not hearsay testimony by the plaintiff but are direct and indirect quotations from the doctors' reports and/or their testimony. Therefore what we have before us in paragraph three is nothing more than a summary of the evidence, without any statement at all by the Board that anything testified to by any of the four witnesses is a fact. Nor can we reasonably assume that the Board is trying to tell us that it found the facts to be what all the witnesses testified they were. There are too many conflicts for that to be so.
All that we can reasonably understand is that the Board is telling us (by implication) that it does not know how to make a specific finding of facts and therefore it tells us what evidence it considered and leaves it to us to pick out therefrom the specific facts which support its award and to reject those which do not.
Once again, therefore, we attempt to tell the Board what a satisfactory specific finding of facts is.
It is a simple, straightforward statement of what happened. A statement of what the Board finds has happened; not a statement that a witness, or witnesses, testified thus and so. It is stated in sufficient relevant detail to make it mentally graphic, i.e., it enables the reader to picture in his mind's eye what happened. And when the reader is a reviewing court the statement must contain all the specific facts relevant to the contested issue or issues so that the court may determine whether the Board has resolved those issues in conformity with the law.
Here the primary contested issues are: Whether appellee sustained (1) an injury (2) by accident (3) arising out of her *327 employment[1] and possibly (4) the extent of her injury, if any. The Board resolved the first three of those issues by its conclusory findings:
"That on the 9th day of November, 1968, plaintiff while in the employ of the defendant at an average weekly wage of $55.00 sustained personal injury by reason of an accident arising out of and in the course of her employment by defendant... ."
In the case of In re Loper (1917), 64 Ind. App. 571, 572, 116 N.E. 324, when the Indiana Workmen's Compensation Law was in its infancy, the Industrial Board was confronted with a fatal "horseplay" case. It certified to the Appellate Court this question: "Upon the foregoing facts, did the injury and death of the employe arise out of his employment, within the meaning of the Indiana Workmen's Compensation Act?" The Board's finding of facts on which it premised that question is a nearly perfect example of what a specific finding of facts should be when the contested issue before the Board is the question therein certified. For the guidance of the Board and of counsel who may (as they should) volunteer to assist the Board (in this case and in all cases) we quote the Loper finding, as follows:
"That on the 28th day of September, 1916, A[2] was in the employment of B as a drill press operator, at an average weekly wage of $14.30; that on said date, while he was engaged in his work as a drill press operator, the assistant superintendent of the employer, under whom A was working, as an act of sport and horseplay upon the part of said assistant superintendent, turned the air from the air compressor, maintained at said time in the employer's factory, upon the employe in the region of the rectum. That the turning of said air upon the employe at said time caused him to quickly jerk and straighten his body. That at said time the employe was suffering from an abscess in the region of the gall bladder. That the turning of said air upon him as aforesaid by the employer's assistant superintendent, causing him to suddenly jerk and strain himself, ruptured said abscess and resulted in acute general peritonitis, which caused the death of said employe on the 30th day of September, 1916. That the employer, by and through its assistant superintendent, had actual knowledge of the injury of the employe at the time that it occurred. That the air compressor in the employer's factory was used for the purpose of cleaning machinery, and long prior to the 28th day of September, 1916, the employes had established the custom of using the same to `brush' their clothes, by which is meant that it was used to blow the dust and dirt off their clothing. That said employes had also formed the habit of using said compressor in acts of sport or horseplay by turning the air therefrom upon one another, which act was known among themselves as `goosing.' That the deceased employe had frequently participated in such sport. That such conduct of the employes was carried on with the actual knowledge and acquiescence of the employer by and through its assistant superintendent. That said assistant superintendent in fact actually participated *328 therein, and no objection whatever was ever made by him or any other representative of the employer to such conduct on the part of the employees. That, at the time said air was turned upon the deceased employe, he was not participating to any extent in the sport or horseplay of the employer's assistant superintendent, but at said time was actually performing his work. That the deceased employe left surviving him his widow and two sons, aged respectively twelve and eight years, with whom he was living at the time of his injury and who were wholly dependent upon him." (64 Ind. App. at 572, 116 N.E. at 324.)
Although we should once again reverse and remand because the award is not based on a finding of facts specific enough to permit intelligent review, we retain jurisdiction and order the Board to certify a proper finding of facts to us on or before the 25th day of September, 1975.
SULLIVAN, P.J., and BUCHANAN, J., concur.
NOTES
[1] As we read the briefs it is not denied that the "incident", out of which plaintiff claims her back condition arose, occurred in the course of her employment.
[2] Lest we taken too literally, there is no need to, and we see no purpose in, designating the plaintiff-employee by the letetr "A", or the defendant-employer as "B". Better, perhaps, that we all follow Appellate Rule 8.2(B) (7)'s brief-writing admonition to counsel:

"References in Briefs to Parties. Counsel will be expected to keep to a minimum references to parties by such designations as `appellant' and `appellee.' It promotes clarity to use the designations used in the lower court or agency proceeding, or the actual names of parties, or descriptive terms such as `the employee,' `the injured person,' `the taxpayer,' `the ship,' `the train,' etc."