JOSEPH FRANCIS MCCALL *v.* NAOMI P. SISSON.

[No. 3-573A60. Filed November 5, 1975.]

*Jon F. Schmoll,* of Gary, *Glenn J. Tabor,* of Valparaiso, for appellant.

*Michael F. Yudt,* of Gary, for appellee.

STATON, P.J.—Naomi Sisson was injured when her automobile was struck by an automobile driven by Joseph McCall at the intersection of State Road 149 and Porter County Road 875 North on November 25, 1967. She filed this action for damages and received a jury verdict for $15,000.00. Joseph McCall's appeal to this Court presents the sole issue of whether Naomi Sisson was guilty of contributory negligence as a matter of law. We conclude that she was not, and we affirm.

## I.

### The Intersection

Indiana State Road 149 is a north-south highway with a posted speed limit of 50 miles per hour. The road crosses under Interstate 80 in northern Indiana, and a short distance south of Interstate 80, it intersects at right angles with Porter County Road 875 North. On both sides of 149 there are stop signs controlling traffic on 875. On 149, north of 875, there is a sign indicating the existence of an intersection.

When 149 is viewed from the north, there is a level spot that ends when highway 149 crosses a creek. From the creek south on 149, there is a rise approximately 100 feet in length, which ends in a plateau 380 feet before 149 intersects with 875. The angle of incline from the bottom of the creek valley to the top of the plateau is approximately 35 degrees and results in a road level depression about 30 to 40 feet in depth.

## II.

### The Evidence

About noon on November 25, 1967, the date of the collision, Sisson was driving west on 875 with her daughter in the right

front passenger seat and her granddaughter in the right rear passenger seat. As she approached the intersection with 149, she observed the stop sign and stopped her car about two or three feet short of 149. She looked to the left (south) and saw no traffic. Then, she looked to the right (north) and saw no traffic. She testified that her vision was unobstructed in either direction for about a half mile. It was a clear day with good visibility and good road conditions. After looking both ways, Sisson proceeded to cross 149. She testified that she safely crossed the road. She had no memory of the collision.

The other automobile involved in the collision was driven by McCall, who was heading south on 149. Just prior to the collision, Walter Sheetz was also traveling south on 149 at approximately 45 to 50 miles per hour. As Sheetz approached the base of the rise leading up to the plateau, he was passed by McCall. Sheetz estimated McCall's speed to be 60 to 65 miles per hour. After McCall passed him, Sheetz lost sight of McCall's automobile after it went up the rise, but as Sheetz arrived at the top of the rise, he noticed a cloud of dust near the intersection. When he arrived at the intersection, he observed Sisson lying on the road and McCall walking around with his hand on his head.

McCall testified that he approached 875 at 50 miles per hour. When he was about halfway between the top of the rise and the intersection, he saw Sisson's vehicle stopped on the east side of 149 heading in a westerly direction. He testified that, since the vehicle was stopped, he proceeded, but when he was "a very short distance from the intersection, the car that was stopped pulled out in front of [him]." He applied his brakes, but was unable to avoid the Sisson vehicle. He testified that he was fairly centered in the southbound lane of 149 and that the Sisson vehicle completely blocked the road, leaving no way for him to drive around it.

After the collision, both cars were found in the southwest

quadrant of the intersection. McCall's car had spun around and was severely damaged in front. Sisson's car was facing northwest and suffered extensive damage to its right side, especially in the vicinity of its right rear wheel. There were no skid marks on 149, but there were tire ruts to the west of 149. There was no debris on 149, but there was broken glass and pieces of chrome to the west of the highway.

## III.

### Contributory Negligence

The general rule regarding contributory negligence is that, if plaintiff's conduct falls below the standard to which an ordinary and reasonable person in like or similar circumstances would conform for his own protection, *Memorial Hospital of South Bend, Inc.* v. *Scott* (1973), 261 Ind. 27, 300 N.E.2d 50, and if the substandard conduct is a direct and not a remote cause of plaintiff's injuries, *Metz* v. *Madison* (1971), 149 Ind. App. 157, 271 N.E. 2d 197; *Huey* v. *Milligan* (1961), 242 Ind. 93, 175 N.E.2d 698, then plaintiff may be found contributorily negligent. The question of contributory negligence is one of fact for the jury if the evidence is conflicting or in dispute or is such that reasonable persons could draw different conclusions or inferences. It is only when one conclusion or inference can be drawn from the evidence that contributory negligence is a question of law. *New York Central R.R.* v. *Glad* (1962), 242 Ind. 450, 179 N.E.2d 571.

Sisson had a statutory duty to yield the right-of-way to vehicles on through highway 149 if the vehicles had entered the intersection or were approaching so closely that they constituted an immediate hazard. IC 1971, 9-4-1-83 (a) (Burns Code Ed.). The general rule is that the violation of a statutory duty is negligence as a matter of law. *Glad, supra.* If a party rebuts this showing of negligence by showing excuse or justification for his noncompliance with

the statutory duty or by showing that his violation of the statute was not the direct cause of his injuries, then violation of the statutory duty becomes nothing more than prima facie evidence of negligence to be submitted to the jury, *Glad, supra.*

McCall contends that, since there were in fact two cars approaching the intersection from the north within Sisson's sworn range of view, the jury could only have concluded that Sisson either did not look or did look and failed to see objects within plain view. If she did not look, she was guilty of contributory negligence as a matter of law in pulling out from a stop sign onto a preferential highway without determining whether a vehicle on the highway constituted an immediate hazard to her vehicle. If she did look and failed to see what she could have seen by the exercise of ordinary and reasonable care, she was guilty of contributory negligence as a matter of law if, by heeding what she could have seen, she could have avoided the collision. *Devine* v. *Grace Constr. & Supply Co.* (1962), 243 Ind. 98, 181 N.E.2d 862; *Pfisterer* v. *Key* (1941), 218 Ind. 521, 33 N.E.2d 330.

We conclude that the evidence was susceptible of more than these two conclusions. Therefore, the question of contributory negligence was properly a question for the jury. From the conflicting evidence regarding the speed of McCall's vehicle and the location of the collision, and from the evidence of the depth and location of the dipped area, the jury could have concluded that Sisson looked, but could not have seen McCall's car, which was obstructed from her view by the depression in the road. Perhaps she could have seen Sheetz's car, because Sheetz's car was behind McCall's car and might not have entered the blind area when Sisson looked. However, the jury could have concluded that Sisson's failure to see Sheetz's car, which was in no way involved in the collision, was not a direct cause of her injuries.

Sisson testified that she looked to the right (north) three

times—once before crossing the highway, once while in the center of the highway, and once after crossing the highway. At no time, she stated, did she see a vehicle approaching. McCall contends that, given the fact of the collision, it is physically impossible that his car was not visible. Thus, McCall argues, Sisson failed to see what she could have seen and was thereby contributorily negligent as a matter of law. Again, we find more than this one conclusion possible from the evidence. The jury could have found that McCall's car was not visible when Sisson looked before crossing 149, and that, even if Sisson could have seen the McCall vehicle at either one of the other two times she looked, she could not at either of these two times have avoided the accident. The jury could have concluded that Sisson's failure to see McCall's car after she was already in the middle of the highway, with no way of avoiding the accident, was not a direct cause of her injuries.

Further, the jury could have concluded from the evidence presented that Sisson safely crossed the road before being hit by McCall. Under this interpretation of the facts, Sisson was not contributorily negligent because she did not breach her statutory duty to yield the right-of-way to approaching vehicles. She did yield the right-of-way; she had safely crossed the highway, and from this point it was McCall's duty to yield the right-of-way to Sisson. IC 1971, 9-4-1-83(a) (Burns Code Ed.).

Because the evidence was conflicting and reasonably susceptible of more than one conclusion, the question of contributory negligence was properly a question for the jury. The judgment should be and hereby is affirmed.

Hoffman, J., and Garrard, J., concur.

NOTE.—Reported at 336 N.E.2d 660.