BOARD OF COMMISSIONERS OF HENRY COUNTY *v.*
RICHARD L. DUDLEY.

[No. 2-774A164. Filed January 29, 1976. Rehearing granted April 6, 1976.]

*Theodore L. Locke, Jr., Michael A. Bergin, Locke, Reynolds, Boyd & Weisell,* of Indianapolis, for appellant.

*Charles S. Brown, Jr., Nancy S. Brown, Brown & Brown,* of New Castle, for appellee.

## CASE SUMMARY

BUCHANAN, P.J.—Review is sought of an affirmative Award by the Full Industrial Board of Indiana (the Board) compensating Plaintiff-Appellee, Richard L. Dudley (Dudley), for injuries received by him in an auto accident while employed by Defendant-Appellant, Board of Commissioners of Henry County (the Employer), the Employer claiming the Award is contrary to law because Dudley was intoxicated.

We reverse.

## FACTS

The facts and evidence before the Board most favorable to Dudley are:

On August 18, 1971, Dudley was severely injured in a two-truck accident on State Road 38 in Henry County, about 8/10 of a mile west of New Castle, Indiana.

Dudley filed a Form 9 Application for Compensation with the Board on March 16, 1972. The Employer responded with a Special Answer and Defense alleging that Dudley's claim should be denied because "at the time of Plaintiff's injuries on August 18, 1971, he was intoxicated, which intoxication was the proximate cause of his injuries."

The parties stipulated:

". . . that on or about August 18, 1971, the plaintiff was in the employ of the defendant at an average weekly wage of $100.00; that on said date plaintiff sustained accidental injuries when he was involved in a collision between a pickup truck that he was driving and a dump truck owned and operated by the defendant."

At the hearing evidence established that on August 18, 1971, Dudley was scheduled as part of his job as the County Service Officer to take a World War I veteran to Veteran's Hospital in Indianapolis; that the two men left New Castle at about

7:30 A.M. in Dudley's pickup truck traveling west on State Road 234 and arrived at Veteran's Hospital on West 10th Street at around 9:30 A.M. Leaving his passenger Dudley began the return trip to New Castle after making a short stop at the PX at Fort Benjamin Harrison.

Dudley testified he had no recollection whatsoever of August 18, 1971, or the events leading to the accident. He did testify, however, to receiving a letter from the General Motors Corporation approximately one month before the accident which requested that he take his truck to the nearest GMC truck dealer who would inspect and correct a possible defect in the brake system. He complied with this letter and was told that the defect pertained only to 1½ ton trucks . . . his being a ½ ton pickup. He stated his ½ ton truck operated normally between March, 1971 (when it was purchased new) and the date of the accident. Dudley received a follow-up letter from GMC dated July 27, 1972,[1] which in no way indicated a defect in the brake system of ½ ton trucks.

---

1. The second letter from GMC states:

"Dear GMC Owner:

Our records indicate that you were notified by Certified Mail that your vehicle, described on the enclosed card, could experience a brake fluid leak out of the end of the booster slave cylinder due to an improper contact surface of the end cap hex head fitting assembly. Brake fluid loss from this condition would result in reduced braking efficiency. Such a loss of brake fluid would be signaled by a lower brake pedal height to the floor.

To prevent the possibility of this condition occurring, you were requested to contact your nearest GMC truck dealer who would inspect and correct this condition as necessary by installing a new nut which has a proper contact surface on the slave cylinder end.

Our records indicate that to date your vehicle has not had this correction performed. If you have had this correction performed, please fill out and return the enclosed card to us so that we may correct our records. If the condition described above has not been corrected, please contact your dealer so arrangements can be made to correct your vehicle.

Further assistance, if required, may be directed to the GMC Zone Office nearest your residence. Your Owners Manual will assist you in determining the location.

Your prompt cooperation is appreciated.

Very truly yours,
GMC Truck & Coach Division
General Motors Corporation"

Sydney Shrout, the driver of the gravel dump truck involved in the collision (Shrout), testified at the hearing that the collision occurred at approximately 12:00 noon on August 18, 1971, while he was traveling west on State Road 38 at between 15 to 20 miles per hour. It was a hot, clear day and as he approached a slight hill in the otherwise straight two-lane blacktop road, he saw Dudley's pickup truck "just cut right out" of its lane into his (the westbound) lane. With Dudley's truck coming headon, Shrout pulled his truck to the right and slammed on his brakes in an attempt to avoid the collision. In so doing Shrout's truck left approximately 30 feet of skid marks and was about halfway off its side of the road at the point of collision.

No evidence was presented that Dudley's swerving was caused by reduced braking efficiency.

The depositions of Trooper Lowell Dean Petree, the investigating officer at the scene of the collision, and Lieutenant Paul Asa, the officer conducting the blood alcohol analysis of the sample of Dudley's blood, were also admitted into evidence at the hearing over Dudley's objection. Trooper Petree testified to the smell of alcohol in Dudley's truck although he did not remember such an odor on Dudley's person. He also testified that after obtaining permission from a doctor attending the unconscious Dudley, he filled a blood capsule at the hospital by holding it under Dudley's mutilated leg. This container was then mailed to the Indiana State Police Laboratories.

Lieutenant Asa testified he received Dudley's blood sample envelope on August 20, 1971, placed it in a refrigerator on the same day, analyzed the sample on September 13, 1971 according to normal procedures, and that two separate gaschromatograph tests indicated a .41 percent alcohol level at the time the sample was taken. He further testified that the level established by law for operating a vehicle under the influence of intoxicating beverage is a .10 percent blood alcohol and that refrigeration has no effect on the blood whatsoever.

Based on this evidence, the Hearing Member denied compensation to Dudley. Thereafter on July 11, 1974, pursuant to Dudley's Form 16 "Application for Review by the Full Board", the Board filed its Findings of Facts which in pertinent part state:

"At the initial hearing, on April 2, 1973, in New Castle, Indiana, it was mutually STIPULATED at the commencement of the evidence that the alleged accident occurred August 18, 1971; that plaintiff's average weekly wage exceeded the maximum of $100; and that plaintiff was employed as a Veterans' Service Officer for Henry County; that he was married and had two dependents.

"The issue was the question of whether by plaintiff's conduct he destroyed his right to compensation. Defendant filed special answer, on December 14, 1972, alleging that the proximate cause of plaintiff's injuries at the time of said accident was plaintiff's intoxication; which special answer is in the following words and figures, to-wit:

"Plaintiff testified that he and his wife, both of whom worked, arose early because both had to be at their offices, she by 8:00 A.M.; that sons Dean, fifteen, and Douglas, seventeen, were home for summer vacation.

"That Mrs. Evelyn Dudley was a candidate for New Castle City Treasurer, and the whole family campaigned daily when possible, including each evening following work.

"That on this day of August 18, 1971, plaintiff was scheduled to take a World War One veteran, Mr. John Black, to Veterans Hospital in Indianapolis.

"That the two men left New Castle about 7:30 A.M. in plaintiff's pickup truck, traveling west on Indiana State Road 234, and arrived at the Veterans Hospital on West Tenth Street around 9:30 A.M. Plaintiff left Black at the Veterans Hospital and began the return trip to New Castle.

"That Mrs. Dudley had requested plaintiff to stop at the PX at Fort Benjamin Harrison and purchase some cigarettes, charcoal, and other items.

"In his testimony plaintiff repeatedly denied any remembrance of having an automobile accident.

"There was testimony that plaintiff had sometime prior to this day of August 18, 1971, received a letter from General Motors to deliver his Chevrolet truck back to the dealer for check or repair of some part of the front end spring and brakes, which the factory had apparently found

defective in other vehicles of like kind; however, the testimony also included the truck had always operated properly prior to this day.

"That the plaintiff on the above date and time was the County Service Officer; however, he was forced to give that up following this vehicle accident, which has left him badly incapacitated.

"That this accident was an almost head-on collision west of New Castle on No. 234, when plaintiff, while returning to New Castle, collided with a Henry County Highway gravel dump truck.

"That since the plaintiff has denied any recollection of the accident, the facts concerning it have been supplied by the other driver, Mr. Sidney Shrout, and the investigative State Police Officer—eight-tenths of a mile west of New Castle City limits.

"That following said accident and while plaintiff was lying in Emergency Receiving and blood was dripping from plaintiff's badly mutilated left leg, State Police Officer Petree held a blood capsule under the dripping leg. He collected some blood as it left plaintiff's body.

"That following obtaining this specimen Officer Petree put capsule, with a filled-out alcohol influence form, in a blood vial container and mailed it to Indiana State Police Laboratories. That testimony presented indicates the test was not processed in the Laboratory for four to twenty-seven days, after which time the officer conducting the test testified that the test result was .41, et [sic]

"That it was as a result of this specifically named gas-chromatograph test that defendant, by its attorneys, filed the special answer, addressed to the principle that 'due to the fact that plaintiff was, while on a mission for his employer, the defendant, under the influence of alcohol and that, as a direct result, caused the collision between his, the plaintiff's, truck and a Henry County Highway gravel dump truck, the plaintiff should be denied compensation.'

"That as a result of this collision the plaintiff suffered near fatal painful and permanent injuries, which an examining physician, Dr. Lowell Thomas, estimated as being 75% of the man as a whole.

"That the blood sample obtained from the injured plaintiff was obtained by the investigating State Police Officer in the hospital emergency room from the unconscious plain-

tiff and there is no additional evidence to establish that intoxication was a proximate cause of plaintiff's injuries.

"That it is further found the disagreement between the parties, resulting in the filing by the plaintiff of a Form 9, results in the majority of the Full Board's decision that the plaintiff is entitled to compensation for his injuries since he obviously has reached the highest level of improvement he will ever attain.

"It is further found that plaintiff should be awarded compensation for temporary total disability at the rate of $66 per week for the statutory period of 26 weeks, beginning August 18, 1971, and compensation at the rate of $60 per week for a specific period of 375 weeks, beginning August 18, 1971, for permanent partial impairment of 75% of the body as a whole, his statutory medical expenses; the costs, if any there be.

"The Full Industrial Board of Indiana now finds for the plaintiff and against the defendant on plaintiff's Form 9 application filed herein on March 16, 1972, and finds against the defendant and for the plaintiff on defendant's special answer filed on December 14, 1972."

## ISSUE

Was the Award of the Board contrary to law in concluding that Dudley's injuries were not proximately caused by his intoxication?

## CONTENTIONS

The Employer contends that there is no proof of any mechanical explanation for Dudley's swerve to the wrong side of the road prior to the accident. Rather, the evidence proves that Dudley's blood alcohol percentage was .41 shortly after the collision and that this level was far in excess of the amount needed to impair control of his motor vehicle and his intoxication proximately caused his injuries.

Dudley responds that the evidence was capable of differing inferences thus justifying the Board's Findings and its Award. He asserts that the unorthodox manner in which the blood sample was taken, the delay in processing, and the failure of Trooper Petree to detect the odor of alcohol on Dudley was

sufficient evidence to allow the Board to reasonably find against the Employer's Special Answer and Defense.

## DECISION

CONCLUSION—It is our opinion that the Board erred as a matter of law in rejecting the Employer's Special Answer and Defense and concluding that Dudley's injuries were not proximately caused by his intoxication.

The only disputed issue is whether Dudley's conduct, i.e., his intoxication, destroyed his right to compensation.

Much of what we said in *DeMichaeli v. Sanders* (1976), 167 Ind. App. 669, 340 N.E.2d 796, is applicable here. As in *DeMichaeli* the only reasonable inference supportable by the evidence before the Board and its findings, leads inescapably to the conclusion that Dudley's injuries were due to his intoxication (death for Sanders resulting from commission of a misdemeanor). In both instances compensation is denied by operation of IC 1971, 22-3-2-8 (Burns Code Ed.)[2] if death or injury is due, *inter alia,* to commission of a misdemeanor or intoxication . . . with the employer having the burden of proof. Thus we are reviewing a negative award. As the principles and authorities stated in Issue Two of *DeMichaeli* apply as well to this case, we will avoid vain repetition by confining ourselves to the particular facts relating to Dudley.

The uncontradicted evidence was *and the Board so found,*[3]

---

2. IC 1971, 22-3-2-8 (Burns Code Ed.) in pertinent part provides: *"Willful misconduct — self-inflicted injury — intoxication — Burden of Proof.*—No compensation shall be allowed for any injury or death due to the employee's intentionally self-inflicted injury, *his intoxication, his commission of a felony or misdemeanor,* his willful failure or refusal to use a safety appliance, his willful failure or refusal to obey a reasonable written or printed rule of the employer which has been posted in a conspicuous position in the place of work, or his willful failure or refusal to perform any statutory duty. *The burden of proof shall be on the defendant.* [Acts 1929, ch. 172, § 8, p. 536]" (Emphasis added.)

3. The Board's findings are not a thing of beauty. *Whispering Pines Home for Senior Citizens v. Nicalek* (1975), Ind. App., 333 N.E.2d 324, 326; *Transport Motor Express, Inc.* v. *Smith* (1972), Ind. App. 279 N.E.2d 262, 29 Ind. Dec. 417; same case (1972), Ind., 289 N.E.2d 737; same case (1974), 262 Ind. 41, 311 N.E.2d 424.

that Dudley could remember nothing, that his truck had always operated properly, that his blood alcohol level was .41%,[4] and that he had an almost head-on collision while returning to New Castle. There was additional uncontradicted evidence that there was an odor of alcohol in Dudley's truck, and that on a clear day he "just cut right out" of his lane into the opposite lane and struck almost head-on another truck which was forced to brake suddenly and go off its side of the road in attempting to avoid Dudley. The only reasonable inference from this uncontradicted evidence is that Dudley was intoxicated and that his injuries were due to his intoxication which proximately caused the collision. So we must reverse unless there is another reasonable inference from these facts as to the cause of Dudley's injuries. *Motor Freight Corp.* v. *Jarvis* (1975), 163 Ind. App. 442, 324 N.E.2d 500 (and cases cited therein); *Smith* v. *Graver Tank & Mfg. Co.* (1973), 158 Ind. App. 431, 302 N.E.2d 852; *Davis* v. *Webster* (1964), 136 Ind. App. 286, 198 N.E.2d 883; *Warren* v. *Indiana Telephone Company* (1940), 217 Ind. 93, 26 N.E.2d 399.

*Price* v. *Reed* (1943), 114 Ind. App. 253, 51 N.E.2d 86 states it succinctly:

"When the commission of a misdemeanor is the proximate cause of a collision in which an employee is injured or killed, compensation must, under the statute, be denied. The question, when the facts are undisputed and of such character that but a single inference can be drawn therefrom by any fair and reasonable mind, is one of law for the Court, otherwise one of fact." 114 Ind. App. at 258, 51 N.E.2d at 88 (citations omitted). *Also see, Anti-Mite Engineering Co.* v. *Peerman* (1943), 113 Ind. App. 280, 46

---

4. Indiana recognizes by statute that a .10 percent blood alcohol level "is prima facie evidence that the defendant was under the influence of intoxicating liquor sufficiently to lessen his driving ability within the meaning of the statutory definitions of the offenses." IC 1971, 9-4-1-56 (Burns Code Ed.). Dudley registered .41 percent and according to the Employer's authority, this placed Dudley in a state ranging from stupor to coma. *See* 3 Lawyer's Medical Cyclopedia § 24.6 (1960). The Board apparently accepted the blood alcohol test (.41%) because it states, ". . . there is no additional evidence to establish . . . intoxication . . .".

N.E.2d 262; *Phillips* v. *Jackson* (1925), 83 Ind. App. 135; 147 N.E. 818; *McCall* v. *Sisson* (1975), 166 Ind. App. 403, 336 N.E.2d 660; *Wood* v. *Snyder* (1925), 83 Ind. App. 31, 147 N.E.2d 314.

Is there, then, another reasonable inference from the uncontradicted evidence?

Apparently the Board speculated that there may have been a defect in Dudley's brake system, but such speculation hardly bears scrutiny. There is no implication that either of the two General Motors' letters related to any other than 1½ ton trucks . . . Dudley's truck was a ½ ton truck. Furthermore, there was no evidence that his brakes failed or that he even attempted to brake.

Like the Board we are sympathetic to those who suffer painful injuries, but neither we nor the Board (who is the finder of fact by statute) may engage in guess, surmise, conjecture, or mere possibility.

> *See, Prudential Life Insurance Co.* v. *Spears* (1954), 125 Ind. App. 21, 24, 118 N.E.2d 813; *Rohlwing* v. *The Wm. H. Block Company* (1953), 124 Ind. App. 97, 102, 115 N.E.2d 450; *Mishawaka Rug & Woolen Mfg. Co.* v. *Walker* (1949), 119 Ind. App. 309, 314, 84 N.E.2d 897.

> *See Also, Halkias* v. *Gary Met. Bank* (1968), 142 Ind. App. 329, 234 N.E.2d 652; *Hunnicutt* v. *Boughner* (1967), 141 Ind. App. 669, 231 N.E.2d 159; *Newsom* v. *Pennsylvania R. Co.* (1962), 134 Ind. App. 120, 186 N.E.2d 699.

No evidence presented at the hearing suggests a legal or proximate cause of the collision other than Dudley's intoxication. There was no hazard associated with the accident sufficiently unforeseeable to break the chain of legal responsibility stemming from Dudley's driving while intoxicated. *See Stauffer* v. *Ely* (1971), 149 Ind. App. 93, 270 N.E.2d 889, 892.

So, the only reasonable conclusion from the Board's Findings and all the evidence presented at the hearing was that Dudley was intoxicated at the time of collision and that such intoxication proximately caused the accident. This distinguishes the present case from others involving conflicting

evidence and reasonable inferences and those where the employee was only shown to have been drinking prior to the accident.

See, *State* v. *Blake* (1963), 134 Ind. App. 348, 188 N.E.2d 116; *Shelby Mfg. Co., Inc.* v. *Harris* (1942), 112 Ind. App. 627, 44 N.E.2d 315; *Traub* v. *Hance* (1939), 107 Ind. App. 134, 23 N.E.2d 293; *Livers* v. *Graham Glass Company* (1931), 95 Ind. App. 358, 177 N.E. 359, 183 N.E. 688; *Great Lakes Dredge and Dock Co.* v. *Tortzke* (1919), 69 Ind. App. 303, 121 N.E. 675; *In re Raynes* (1917), 66 Ind. App. 321, 118 N.E. 387.

The Board necessarily concluded that Dudley's blood alcohol level was .41%. So Dudley's arguments relating to the taking and preservation of the blood sample do not form a basis for rejecting a blood alcohol test (gaschromatograph test) recognized by Indiana law. IC 1971, 9-4-1-56 (Burns Code Ed.). His objection merely goes to the admissibility of the blood test results, as in the context of a criminal search and seizure, not to its probative value.

We are reluctant to reverse awards of the Industrial Board, be they affirmative or negative (this case), because the Board is the fact finder. Even so, there must be effective judicial review of the decisions of an administrative tribunal. And a question of fact passes into the realm of a question of law when the evidence before the Board is substantially without conflict, or the Board has made findings from conflicting evidence in support of its decision, and such evidence or findings support only *one* reasonable inference or conclusion, which is contrary to the Board's conclusion.

See, *DeMichaeli* v. *Sanders, supra* (and cases cited therein) ; 4 DAVIS, ADMINISTRATIVE LAW TREATISE § 29.05, pp. 139-141 (1958).

If there is no such review, if there is no outer limit, then litigants have no protection from arbitrariness, fraud, conjecture, guess, surmise, and yes, even tyranny. To paraphrase Patrick Henry, if that be weighing the evidence, then make the most of it.

As reasonable men could only conclude that Dudley was intoxicated and that his intoxication legally caused his injuries, compensation should be denied and the Board's decision reversed.

Reversed.

Sullivan, J., concurs; White, J., concurs and dissents with opinion.

#### CONCURRING AND DISSENTING OPINION

WHITE, J.,—The only issues of fact before the board were whether (1) plaintiff's appellee Dudley was intoxicated at the time of his injury and, if so, (2) whether his injury was due to such intoxication. Ind. Ann. Stat. § 22-3-2-8 (Burns Code Ed., 1974) provides that if the defendant sustains the burden of proving the affirmative of both these issues no compensation shall be allowed.

The Industrial Board made no findings of fact, either general or special, on those issues. It merely recited the evidence relevant thereto. It thus failed to execute the mandate of Ind. Ann. Stat. § 22-3-4-7 (Burns Code Ed., 1974) that it file its award "with the finding of the facts on which it is based." *Whispering Pines Home for Senior Citizens* v. *Nicalek* (1975), Ind. App., 333 N.E.2d 324, 326, 48 Ind. Dec. 568, 570; *Transport Motor Express, Inc.* v. *Smith* (1972), Ind. App., 279 N.E.2d 262, 29 Ind. Dec. 417; same case (1972), Ind. App., 289 N.E.2d 737, 34 Ind. Dec. 42; same case (1974), 262 Ind. 41, 311 N.E.2d 424, 42 Ind. Dec. 48. For that reason, and not for the reasons stated by the majority, I join in reversing the award.

Furthermore, I cannot agree with the majority's conclusion that the *only* reasonable inference from the evidence (which it characterizes as "uncontradicted") "is that Dudley was intoxicated and that his injuries were due to his intoxication which proximately caused the collision". I do agree, however, that such an inference is reasonable and if the board had made such a finding its award of compensation would be

contrary to law. In that event it would be our duty to reverse and remand with directions to enter an award denying compensation.

As I read the majority's opinion, it holds that the board found (i.e., "necessarily concluded") that Dudley's blood alcohol level was .41% If I could so interpret the board's findings, I would concur in reversing and remanding with directions to enter an award denying compensation. But so far as my reading discloses, the nearest the board came to making such a finding is in its recital that "the officer conducting the test testified that the test result was .41, et." Other recitals suggest that the board may have entertained serious doubt as to the accuracy of that test result. Unfortunately the board's so-called "findings" are so vague, ambiguous, muddled, and incomplete that it is impossible to state with any degree of certainty the rationale on which compensation was awarded. However, I can only rationalize the result on the hypothesis that the board rejected the testimony that Dudley's blood alcohol content was .41%.[1]

*Wright* v. *Peabody Coal Co.* (1948), 225 Ind. 679, 77 N.E.2d 116, was a case in which the Appellate Court had reversed a negative award "with instructions . . . to enter an award in favor of appellant in accordance with this opinion. . . ." (73 N.E.2d at 695.)[2] That result was reached because the Appellate Court had concluded that "the evidence having probative value is without conflict and . . . is so conclusive in its character as to force a conclusion contrary to that arrived at by the Industrial Board." (73 N.E.2d at 694.) In reversing the judgment of the Appellate Court and ordering it to affirm the award, the Indiana Supreme Court said:

1. The last sentence of the majority opinion's note 4 is: "The Board apparently accepted the blood alcohol test (.41%) because it states, '. . . there is no additional evidence to establish . . . intoxication . . .'." The inference I draw is quite the opposite, i.e., that because there is "no additional evidence" intoxication has not been established.

2. The Appellate Court opinions are found in 73 N.E.2d 692, and 74 N.E.2d 744.

". . . of course the trier of facts cannot arbitrarily reject items of oral evidence but, even though a particular item of evidence is not expressly or directly contradicted, this does not prevent the trier from taking into consideration all of the other evidence including circumstances and surroundings that might in any way affect the weight or credibility of such evidence, and the trier may disregard oral evidence if considered unreasonable or inconsistent with facts and circumstances shown by the other evidence in the case." (225 Ind. at 687.)

Some of the circumstances which *may have* led the board to reject the testimony as to the blood test results (if it did) are alluded to in the board's "findings", others may be found in Dudley's arguments relating to the taking and preservation of the blood sample. Other such circumstances are the failure of Trooper Petree to detect the odor of alcohol on Dudley even though he was close enough at least twice to have done so, especially if Dudley had .41% alcohol in his blood; the absence of direct or circumstantial evidence, other than odor in the truck and the blood test, that Dudley had been drinking in it prior to the accident; and finally the doubt arising from the incredibly high percentage of blood alcohol testified to by Officer Asa who performed the blood test. (Dudley could not have climbed into and started his truck if he was "in a state ranging from stupor to coma" [majority's note 4], from drinking at some stop en route.)

Had the board made a finding to the effect that the evidence of intoxication was insufficient to sustain defendant's burden of proving intoxication, I would vote to affirm the award. Likewise, I would vote to affirm an award denying compensation were it supported by a satisfactory finding of facts sustaining the defense of intoxication.

Only the board has the statutory authority to decide which finding should be made. That is the lesson of *Cole* v. *Sheehan Construction Company* (1944), 222 Ind. 274, 280, 53 N.E.2d 172, 175:

"The Appellate Court found that the undisputed evidence produced by the appellant established that she and the

decedent were husband and wife and they were living apart at the time of his death for their own convenience. The court concluded that, as a consequence, the appellant was entitled to compensation. *Cole* v. *Sheehan Construction Co.* (1943), 51 N.E.2d 391. It is immaterial which party produced the evidence and it does not necessarily follow that there was no conflict in the evidence merely because the testimony was undisputed. A conflict may arise out of the testimony of a single witness, though it is not disputed by any other testimony. *McKee* v. *Mutual Life Ins. Co.* (1943), ante, p. 10, 51 N.E.2d 474. Since the full board made no finding as to some of the material issues the problem presented is not that of determining whether there is some evidence tending to support an award. We think, therefore, that it was an invasion of the province of the full board for the Appellate Court to undertake to find the ultimate facts in the first instance. The statute does not contemplate that the functions of the Industrial Board may be assumed by the courts. The better practice would appear to be to remand the proceeding to the board with directions for it to discharge its statutory duty by finding the essential facts, and by entering an award based thereon. When that has been done any party feeling aggrieved may have a judicial review according to the established practice."

I would reverse the award and remand the case to the board with directions to find the facts relevant to the defense of intoxication and to enter an award accordingly.[3]

NOTE.—Reported at 340 N.E.2d 808.

### OPINION ON REHEARING

SULLIVAN, J.—Appellee Richard L. Dudley has filed his Petition for Rehearing addressed to the decision and opinion of this Court which were rendered January 29, 1976 as reported at 340 N.E.2d 808. The decision, in which the author of this opinion concurred, reversed an affirmative award by the Industrial Board upon the basic premise that the only reasonable conclusion which could be reached from the Board's findings and from the evidence was that the claimant was

---

3. An adequate finding of the specific facts *may* require some finding as to the credibility of some of the testimony. See, for example, finding No. 5 in *Newman* v. *State* (1975), 263 Ind. 569, 334 N.E.2d 684, 685.

intoxicated at the time of the vehicle collision which injured him, that such injury was due to his intoxication and that therefore pursuant to Ind. Ann. Stat. § 22-3-2-8 (Burns Code Ed. 1974) claimant was, as a matter of law, not entitled to compensation.

Judge White filed a separate opinion concurring in part and dissenting in part.

The "Findings of the Full Industrial Board are set forth in their entirety in the reported decision 340 N.E.2d 808 at 810-811. They are here reported:

"At the initial hearing, on April 2, 1973, in New Castle, Indiana, it was mutually STIPULATED at the commencement of the evidence that the alleged accident occurred August 18, 1971; that plaintiff's average weekly wage exceeded the maximum of $100; and that plaintiff was employed as a Veterans' Service Officer for Henry County; that he was married and had two dependents.

"The issue was the question of whether by plaintiff's conduct he destroyed his right to compensation. Defendant filed special answer on December 14, 1972, alleging that the proximate cause of plaintiff's injuries at the time of said accident was plaintiff's intoxication; which special answer is in the following words and figures, to-wit:

"Plaintiff testified that he and his wife, both of whom worked, arose early because both had to be at their offices, she by 8:00 A.M.; that sons Dean, fifteen, and Douglas, seventeen, were home for summer vacation.

"That Mrs. Evelyn Dudley was a candidate for New Castle City Treasurer, and the whole family campaigned daily when possible, including each evening following work.

"That on this day of August 18, 1971, plaintiff was scheduled to take a World War One veteran, Mr. John Black, to Veterans Hospital in Indianapolis.

"That the two men left New Castle about 7:30 A.M. in plaintiff's pickup truck, traveling west on Indiana State Road 234, and arrived at the Veterans Hospital on West Tenth Street around 9:30 A.M. Plaintiff left Black at the Veterans Hospital and began the return trip to New Castle.

"That Mrs. Dudley had requested plaintiff to stop at the PX at Fort Benjamin Harrison and purchase some cigarettes, charcoal, and other items.

"In his testimony plaintiff repeatedly denied any remembrance of having an automobile accident.

"There was testimony that plaintiff had sometime prior to this day of August 18, 1971, received a letter from General Motors to deliver his Chevrolet truck back to the dealer for check or repair of some part of the front end spring and brakes, which the factory had apparently found defective in other vehicles of like kind; however, the testimony also included the truck had always operated properly prior to this day.

"That the plaintiff on the above date and time was the County Service Officer; however, he was forced to give that up following this vehicle accident, which has left him badly incapacitated.

"That this accident was an almost head-on collision west of New Castle on No. 234, when plaintiff, while returning to New Castle, collided with a Henry County Highway gravel dump truck.

"That since the plaintiff has denied any recollection of the accident, the facts concerning it have been supplied by the other driver, Mr. Sidney Shrout, and the investigative State Police Officer—eight-tenths of a mile west of New Castle City limits.

"That following said accident and while plaintiff was lying in Emergency Receiving and blood was dripping from plaintiff's badly mutilated left leg, State Police Officer Petree held a blood capsule under the dripping leg. He collected some blood as it left plaintiff's body.

"That following obtaining this specimen Officer Petree put capsule, with a filled-out alcohol influence form, in a blood vial container and mailed it to Indiana State Police Laboratories. That testimony presented indicates the test was not processed in the Laboratory for four to twenty-seven days, after which time the officer conducting the test testified that the test result was .41, et. [sic]

"That it was as a result of this specifically named gas-chromatograph test that defendant, by its attorneys, filed the special answer, addressed to the principle that 'due to the fact that plaintiff was, while on a mission for his employer, the defendant, under the influence of alcohol and that, as a direct result, caused the collision between his, the plaintiff's truck and a Henry County Highway gravel dump truck, the plaintiff should be denied compensation.'

"That as a result of this collision the plaintiff suffered near fatal painful and permanent injuries, which an examining physician, Dr. Lowell Thomas, estimated as being 75% of the man as a whole.

"That the blood sample obtained from the injured plaintiff was obtained by the investigating State Police Officer in the hospital emergency room from the unconscious plaintiff and there is no additional evidence to establish that intoxication was a proximate cause of plaintiff's injuries.

"That it is further found the disagreement between the parties, resulting in the filing by the plaintiff of a Form 9, results in the majority of the Full Board's decision that the plaintiff is entitled to compensation for his injuries since he obviously has reached the highest level of improvement he will ever attain.

"It is further found that plaintiff should be awarded compensation for temporary total disability at the rate of $66 per week for the statutory period of 26 weeks, beginning August 18, 1971, and compensation at the rate of $60 per week for a specific period of 375 weeks, beginning August 18, 1971, for permanent partial impairment of 75% of the body as a whole, his statutory medical expenses; and costs, if any there be.

"The Full Industrial Board of Indiana now finds for the plaintiff and against the defendant on plaintiff's Form 9 application filed herein on March 16, 1972, and finds against the defendant and for the plaintiff on defendant's special answer filed on December 14, 1972."

The Petition for Rehearing alleges in part as follows:

"1. The Court states that the Industrial Board found Dudley's blood alcohol level to be .41. Nowhere in its findings does the Board make such a statement. In fact, it specifically 'finds against the defendant and for the plaintiff on defendant's special answer . . .' The Board's finding that there was no evidence beyond the testimony of the State Police Officer to establish intoxication very clearly indicates that the Board did not give credence to the testimony of that officer, and that the *burden of proof as to intoxication was not sustained* by the employer."

This allegation has prompted the author of this opinion to give careful reconsideration to the matter heretofore decided and upon reflection that author of this opinion has concluded that as stated by Judge White in his separate earlier opinion:

"The Industrial Board made no findings of fact, either general or special, on those issues [of intoxication and causation]. It merely recited the evidence relevant thereto." 340 N.E.2d at 814.

Accordingly, and in the interests of justice, it is the decision of a majority of the court that the opinion of January 29, 1976 be and the same is now vacated and set aside.

The award of the Board is reversed and the cause is remanded to the Board with instructions for it to discharge its statutory duty by finding the essential facts and by entering an award based thereon.

White, J., concurs in result for the reasons stated in his prior opinion; Buchanan, P.J., dissents with separate opinion.

DISSENTING OPINION

BUCHANAN, P.J.—I dissent to the action taken by the majority on rehearing on two grounds:

1. The clear implication of the Findings is that Dudley's injuries were due to his intoxication.

2. It is unnecessary to remand this case to the Board for more specific findings because the Board's decision should be reversed in any event as the evidence is substantially without conflict and supports only *one* reasonable conclusion, a conclusion which the Board did not reach.

GROUND I—While the Findings are clouded by some evidentiary language, taken as a whole, they clearly imply Dudley was intoxicated.

The Findings emphasize that Dudley had no recollection of the accident.

The Findings recite that "however the testimony also included the truck had always operated properly to this day," which implies that the truck did operate properly on the day in question.

The Findings recite "that this accident was an almost head-on collision west of New Castle. . . ."

The Findings recite that "the facts concerning it [the accident] have been supplied by the other driver, Mr. Sidney Shrout, and the investigative State Police Officer . . .", thereby seeming to signal the Board's acceptance of the testimony of Mr. Shrout and the State Police Officer. Mr. Shrout had testified that Dudley "just cut right out" of his lane into the opposite lane and struck Shrout's truck on the wrong side of the road.

The Findings recite in some detail the testimony of the police officer that the result of the gaschromatograph test was .41%, again implying that such was the fact.

The Findings appear to recognize Dudley's intoxication by stating ". . . there is no *additional* evidence to establish that intoxication was a proximate cause of Plaintiff's injuries."

The sum total of what the Board specifically found and impliedly found by singling out certain evidence and emphasizing such evidence, is that Dudley was intoxicated.

While neither as specific or artful as they should be, the cumulative effect of the Findings is that Dudley was intoxicated, but for some reason not appearing in the record the Board shrunk from reaching a conclusion that his intoxication caused his injuries, which would be consistent with its Findings.

GROUND II—In my opinion it would serve no useful purpose to remand this case for more specific findings because the *only* reasonable inference arising from the uncontradicted evidence is that Dudley's intoxication[1] caused his injuries.

Dudley could remember nothing, his truck had always operated properly, his blood alcohol level was .41%, he had a collision on the wrong side of the road while returning to

---

1.  *See* authorities cited in the original opinion of this case at 340 N.E.2d at 813. *Board of Commissioners of Henry County* v. *Dudley* (1976), 167 Ind. App. 693, 340 N.E.2d 808.

New Castle, there was an odor of alcohol in his truck, and on a clear day he "just cut right out" of his lane into the opposite lane and struck almost head-on Shrout's truck which was forced to brake suddenly and go off its side of the road in attempting to avoid Dudley. The only reasonable inference from this uncontradicted evidence was that Dudley was intoxicated and that his injuries were due to his intoxication which proximately caused the collision. The Board seems to recognize the fact of intoxication but concludes that the intoxication was not a proximate cause of Dudley's injuries. But there is no other evidence before the Board of *any* other cause of the collision.

As Judge White reminds us in his original concurring and dissenting opinion, the Board may disbelieve otherwise uncontradicted testimony, but *only if* unreasonable or inconsistent with facts and circumstances shown by the other evidence in the case. *See, Board of Commissioners of Henry County* v. *Dudley, supra,* 340 N.E.2d at 815; *Wright* v. *Peabody Coal Co.,* (1948), 225 Ind. 679, 687, 77 N.E.2d 116. There is no such other evidence in this case. To return the case for more specific findings is indeed a meaningless endeavor.

The Board has acted arbitrarily. It has rejected the only reasonable inference possible from the evidence and its own Findings and its decision should be reversed as a matter of law . . . all as more fully stated in our original opinion at 340 N.E.2d 808, which is now vacated by action of the majority of this Court. Also *see, DeMichaeli & Associates* v. *Sanders* (1976), 167 Ind. App. 669, 340 N.E.2d 796.

NOTE.—Reported at 344 N.E.2d 853.